**LABLE & COMPANY, Appellee,**

v.

**FLOWERS, Appellant.**

[Cite as *Lable & Co. v. Flowers* (1995), 104 Ohio App.3d 227.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 94CA005924.

Decided May 31, 1995.

Robert Todt, for appellee.

David Taylor, for appellant.

DICKINSON, Judge.

Defendant-appellant, Antoinette Flowers, has appealed from a judgment of the Lorain County Municipal Court that ordered her attorney to pay $3,167.50 as sanctions for frivolous conduct. Plaintiff-appellee, Lable & Company, had sought to have defendant evicted from her apartment for failure to pay rent. Defendant filed a counterclaim, along with several motions and briefs, asserting that plaintiff's eviction action was racially motivated. The trial court determined that defendant's conduct was frivolous and ordered her attorney to pay plaintiff's attorney fees. Defendant has argued that the trial court (1) incorrectly determined that the claim of racial discrimination in an eviction proceeding was frivolous; (2) incorrectly determined that her actions constituted frivolous conduct; (3) incorrectly determined that she willfully violated Civ.R. 11; (4) incorrectly determined that she abused the judicial process in bad faith; (5) incorrectly calculated the amount of plaintiff's attorney fees; (6) incorrectly determined that the award of attorney fees was tied to a ceiling of "reasonable costs"; and (7) incorrectly determined that plaintiff was entitled to payment of its attorney fees. This court reverses the judgment of the trial court because it incorrectly determined that defendant's attorney's conduct was frivolous.

I

Defendant Antoinette Flowers has appealed from a judgment ordering her attorney to pay plaintiff's attorney fees as a sanction for frivolous conduct relating to her defense of an eviction proceeding and her counterclaim of racial discrimination. On August 25, 1993, plaintiff Lable & Company filed a complaint against defendant in the Lorain County Municipal Court for forcible entry and detainer. Plaintiff averred that defendant had failed to pay her rent pursuant to her lease agreement and, accordingly, demanded restitution of the premises. On September 9, 1993, plaintiff moved for summary judgment on the grounds that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. In an affidavit in support of plaintiff's motion for summary judgment, the manager of the apartment complex where defendant resided represented that defendant failed to "pay rent in the amount of $98.00 for the month of August 1993." The manager also represented that defendant had been served with a three-day notice to vacate the premises to which defendant had not responded.

On September 23, 1993, defendant answered the complaint, denying all of plaintiff's substantive allegations. In addition, she asserted a counterclaim against plaintiff, alleging that "[t]he motive for plaintiff's filing this action in forcible entry and detainer was racial prejudice." Defendant prayed that plain-

tiff's complaint be dismissed and sought $9,950 in damages. On the same day, defendant replied to plaintiff's motion for summary judgment and argued that summary judgment was inappropriate because there were material issues of fact in dispute. Specifically, defendant argued that a material issue of fact was created by plaintiff's refusal to accept the tender of her rent payment in light of the fact that it had previously accepted late payments. Defendant claimed that she tendered her rental payment, which was due August 1, 1993, on August 7, 1993, but that plaintiff refused it. She also asserted that plaintiff's actions were racially motivated. She attached an affidavit in support of her opposition to plaintiff's motion for summary judgment, in which she recounted that she had heard a manager of the apartment complex refer to black females as "nigger bitches" and had heard the same manager state that "he was going to 'get rid of' the 'nigger bitches' in buildings 'A' and 'D'."

The trial court conducted a hearing on plaintiff's motion for summary judgment on December 14, 1993. On February 15, 1994, the trial court determined that there were no genuine issues of fact and that plaintiff was entitled to judgment as a matter of law, stating:

"Defendant, in her memorandum filed December 27, 1993, indicates that the plaintiff refused to accept the defendant's rent and that said refusal was racially motivated. Further, the defendant relates that the plaintiff made it a practice to accept late rental payments. However, the record indicates that defendant, on March 10, 1993, executed a supplemental agreement whereby defendant was placed on notice that late rent payments would not be accepted. Defendant attempted to pay the August rent on the seventh day, which date exceeds the 5–day grace period set forth in paragraph five of the lease between the parties.

"The court finds that the only material issue existing between the parties is whether the rent has been paid for August 1993. Pursuant to the hearing had on December 14, 1993, the court finds that the rent has not been paid to date, and further finds that the plaintiff is not required to accept rent payments after Notice of Termination and plaintiff will not be required to do so in this case. * * *"[1]

Defendant dismissed her counterclaim after the trial court granted summary judgment in plaintiff's favor. On March 24, 1994, plaintiff moved for sanctions pursuant to Civ.R. 11 and R.C. 2323.51. Plaintiff asserted that several of the pleadings, motions, and briefs filed by defendant were (1) served merely to harass or maliciously injure plaintiff; (2) not warranted under existing law and could not be supported by a good-faith argument for an extension, modification, or reversal

---

1. Defendant has not assigned error to the trial court's order granting plaintiff summary judgment. Accordingly, that issue is not before this court.

of existing law; (3) contained scandalous matter; or (4) were interposed for delay. Specifically, plaintiff complained of defendant's memorandum in opposition to its motion for summary judgment, her motion to strike its accounting of rent owed, her motion to consolidate her case with several eviction proceedings pending against other residents of her apartment complex, her motion to stay the proceedings, and her motion to compel discovery.

The trial court conducted a hearing on the issue and, on July 1, 1994, ordered defendant's attorney to pay $3,167.50 as attorney fees. The trial court determined that plaintiff incurred $3,467.50 in attorney fees, "all in response to the blizzard of motions and pleadings filed by" defendant. It subtracted $300 from that amount for the "reasonable cost" of prosecuting an eviction proceeding. On August 29, 1994, the trial court issued the following findings of fact in support of its award of sanctions:

"This is an action for restitution of certain leased premises, said action based on defendant's nonpayment of rent. During the course of proceedings, defendant, through her counsel, claimed that the eviction was based on racial bias on the part of the plaintiff as set forth in defendant's first counterclaim and in an affidavit executed by the defendant on September 4, 1993. What in the court's opinion should have been a simple, noncomplex nonpayment of rent forcible detainer action, turned out to be a cause celebre on the part of the defendant, who filed a multiplicity and flurry of pleadings.

"Among the pleadings filed by the defendant was a motion to consolidate the instant complaint with three other pending evictions. In the court's opinion, the other three cases had nothing in common with the instant matter and hence the motion was denied. Simply put, the defendant painted all the cases with a wide brush alleging discrimination as the basis for the evictions, and therefore all the complaints should be consolidated. .

"In the interest of judicial economy, the court would have been eager to consolidate all four cases, but could not, there being no commonality in the issues, nor with respect to the defendants.

" * * *

"It was clear to the court that the complaint was a simple nonpayment of rent case and, therefore, the only issue was the nonpayment of rent."

The court concluded that defendant's "pleadings were not filed in good faith, were not intended to develop a defense to a nonpayment of rent complaint, were frivolous in nature, and thus sanctions [were] ordered * * *." Defendant has timely appealed to this court.

## II

Defendant essentially makes two arguments regarding the trial court's award of sanctions: (1) the trial court incorrectly determined that her attorney's conduct was frivolous, and (2) the trial court incorrectly calculated the amount of sanctions it awarded to plaintiff. Inasmuch as all her assignments of error are interrelated with these two arguments, they will be discussed together.

## A

Defendant has argued that the trial court incorrectly determined that her attorney's conduct was frivolous. The trial court determined that defendant's "pleadings were not filed in good faith, were not intended to develop a defense to a nonpayment of rent complaint, [and] were frivolous in nature." The trial court, however, failed to articulate the authority under which it ordered defendant's attorney to pay the sanctions. This court has held that there are at least three possible rationales for awarding attorney fees for frivolous conduct: (1) a court's " 'inherent power to do all things necessary to the administration of justice and to protect [its] own powers and processes,' " (2) Civ.R. 11, and (3) R.C. 2323.51. *Ceol v. Zion Indus., Inc.* (1992), 81 Ohio App.3d 286, 289, 610 N.E.2d 1076, 1077, quoting *Slabinski v. Servisteel Holding Co.* (1986), 33 Ohio App.3d 345, 346, 515 N.E.2d 1021, 1023. Inasmuch as plaintiff's motion for sanctions was based upon Civ.R. 11 and R.C. 2323.51, this court will analyze those possible rationales.

## 1

R.C. 2323.51 permits an award of attorney fees as a sanction for frivolous conduct. Subsection (A)(2) of the statute defines "frivolous conduct" as the filing of an action, assertion of a claim, defense, or other position, or the taking of any other action in connection with a civil action that either "(a) * * * obviously serves merely to harass or maliciously injure another party to the civil action; [or] (b) * * * is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law." Further, R.C. 2323.51(B) provides that "the trial court may award attorney fees only after conducting a hearing that allows the parties to present evidence in support or opposition to such award * * *." *Shaffer v. Mease* (1991), 66 Ohio App.3d 400, 409, 584 N.E.2d 77, 83, citing *Dreger v. Bundas* (Nov. 15, 1990), Cuyahoga App. No. 57389, unreported, 1990 WL 178193. The hearing is required so that the trial court can "make a factual determination of whether there existed frivolous conduct and whether the party bringing the motion was adversely affected by such conduct." *Id.*

An analysis of a claim under the frivolous conduct statute requires a determination of "whether an action taken by the party to be sanctioned

constitutes 'frivolous conduct,' and * * * what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party." *Ceol v. Zion Indus., Inc., supra,* 81 Ohio App.3d at 291, 610 N.E.2d at 1079. This court has noted that the initial decision of whether a party's conduct was frivolous requires a factual determination. *Id.* This is particularly true if a court must determine if conduct "serves merely to harass or maliciously injure another party to the civil action." R.C. 2323.51(A)(2)(a). Under this prong of the definition of frivolous conduct, the trial judge has "the benefit of observing the entire course of proceedings and will be most familiar with the parties and attorneys involved." *Ceol,* 81 Ohio App.3d at 292, 610 N.E.2d at 1079. Consequently, a finding that certain conduct was engaged in to harass or injure another party is entitled to substantial deference by a reviewing court. *Id.,* citing *S.P.U. Waterproofing of Ohio, Inc. v. Zatorski* (June 19, 1991), Summit App. No. 14932, unreported, at 3, 1991 WL 116267.

A determination, however, that conduct "is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law" (R.C. 2323.51[A][2][b] ), requires a legal analysis. Therefore, "[w]hether conduct is warranted under existing law or can be supported by [a] good-faith argument for extension, modification, or reversal of existing law is a question of law, 'peculiarly within the competence of an appellate court.' " *Biesiada v. Beck* (June 23, 1993), Summit App. No. 15997, unreported, at 3, 1993 WL 216278, quoting *Tomb & Assoc., Inc. v. Wagner* (1992), 82 Ohio App.3d 363, 366, 612 N.E.2d 468, 470.

It is unclear what conduct the trial court determined was frivolous. It stated that the "pleadings" filed by defendant were frivolous. In plaintiff's *motion for sanctions,* plaintiff repeatedly claimed that defendant had filed "frivolous and scandalous pleadings." The substance of the motion, however, concerned various motions and briefs that had been filed by defendant, not her "pleadings." The term "pleadings," under Civ.R. 7(A), has a particular meaning. Pleadings include only "a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complain is served. No other pleading shall be allowed * * *." Civ.R. 7(A).

In this case, the trial court failed to make a specific finding regarding whether the conduct of defendant's attorney in filing the motions and briefs about which plaintiff had complained was done to "harass or maliciously injure" plaintiff. As noted previously, the trial court found, in a conclusory fashion, that defendant's "pleadings were not filed in good faith, were not intended to develop a defense to

a nonpayment of rent complaint, [and] were frivolous in nature * * *." Since the trial court did not include a determination that defendant's conduct was done to harass or maliciously injure plaintiff in its findings of fact, this court cannot conclude that the trial court based its decision to impose sanctions on R.C. 2323.51(A)(2)(a).

To the extent that the trial court determined that defendant's conduct was frivolous because it was "not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law" (R.C. 2323.51[A][2][b] ), it did so incorrectly. R.C. 4112.02(H) prohibits any person from discriminating against another person in leasing housing accommodations based upon the person's race. Subsection (H)(1) specifically provides that it is an unlawful discriminatory practice for any person to "[r]efuse to sell, transfer, assign, rent, lease, sublease, or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, familial status, ancestry, handicap, or national origin[.]" Further, R.C. 4112.99 provides that any person who violates R.C. Chapter 4112 "is subject to a civil action for damages, injunctive relief, or any other appropriate relief." The Ohio Supreme Court has stated that "[a] plain reading of this section yields the unmistakable conclusion that a civil action is available to remedy any form of discrimination identified in R.C. Chapter 4112." *Elek v. Huntington Natl. Bank* (1991), 60 Ohio St.3d 135, 136, 573 N.E.2d 1056, 1057.

In this case, defendant raised her claim of racial discrimination by way of a counterclaim. Civ.R. 13(A) requires that a pleading "state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim * * *." A legitimate argument can be made that defendant was required to raise her discrimination claim in response to the eviction proceeding as a compulsory counterclaim. This court has determined that a party's failure to assert a compulsory counterclaim in a responsive pleading constitutes *res judicata* and precludes the litigation of the counterclaim in a subsequent action. *Quintus v. McClure* (1987), 41 Ohio App.3d 402, 536 N.E.2d 22. Accordingly, if the trial court based its decision to award sanctions against defendant on R.C. 2323.51, it did so incorrectly.

2

Civ.R. 11 permits a court to award attorney fees in the event that a pleading or motion is filed in contravention of the Rule. Civ.R. 11 requires an attorney to sign all pleadings and motions and further provides that:

" * * * The signature of an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For willful violation of this rule an attorney or pro se party * * * may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule." [2]

This court has determined that before a court imposes sanctions under Civ.R. 11, it must consider whether the attorney who signed the document (1) read it; (2) harbored good grounds to support it to the best of his or her knowledge, information, and belief; and (3) did not file it for the purpose of delay. *Ceol v. Zion Indus., Inc.,* 81 Ohio App.3d at 290, 610 N.E.2d at 1078.

■ In this case, the essence of the trial court's determination to award sanctions appears to have been based upon the fact that defendant sought to maintain a claim of racial discrimination in a forcible entry and detainer action. Given the facts of this case, however, the maintenance of that claim was not frivolous. Defendant submitted an affidavit in support of her response to plaintiff's motion for summary judgment that indicated that a manager of plaintiff's apartment complex used derogatory language towards black female residents and had stated that "he was going to 'get rid of' the 'nigger bitches'" in the apartment complex. Accordingly, defendant's attorney had a "good ground," based upon the facts alleged by defendant, to assert the claim that defendant's eviction was racially motivated. Thus, defendant's attorney's assertion of a discrimination claim cannot be considered frivolous under Civ.R. 11. Defendant's assignments of error relating to the trial court's determination that her attorney engaged in frivolous conduct are sustained.

### B

Defendant's second argument is that the trial court incorrectly determined the amount of attorney fees it awarded as sanctions. In light of this court's disposition of defendant's assignments of error regarding the trial court's determination that defendant's attorney's conduct was frivolous, those assignments of

---

2. Amended Civ.R. 11 became effective July 1, 1994. Prior to that date, the rule applied only to "pleadings." The amendment expanded the coverage of the rule to include motions and other papers. Under either version of the rule, however, defendant's attorney's conduct was not frivolous.

error dealing with the calculation of attorney fees are moot and are overruled on that basis.

## III

Defendant's assignments of error concerning the trial court's determination that her attorney's conduct was frivolous are sustained. The judgment of the trial court is reversed.

*Judgment reversed.*

BAIRD, P.J., and SLABY, J., concur.