OPINION
On May 15, 1993, Roy E. Snodgrass, Jr. ("Snodgrass"), an employee of AMF Bowling Centers, Inc., suffered fatal injuries as a result of electrocution while attempting to repair a pinspotting machine at the Main Lanes Bowling Center ("Main Lanes"). Plaintiff-appellant, as administrator of the estate of Snodgrass filed a complaint against Main Lanes alleging an intentional tort and a cause of action for negligent design, negligent failure to warn, and strict products liability against AMF, Inc., and its successor AMF Bowling, Inc. (collectively "AMF"). The trial court granted summary judgment in favor of Main Lanes on appellant's intentional tort claim. The negligent design and products liability claims against AMF were tried to a jury. During trial, appellant voluntarily dismissed the negligent design claim with the consent of the court and without objection from AMF. The jury found the pinspotter machine was not defective and the trial court journalized the jury's verdict (case No. 94CVH05-3329). Appellant appealed and this court affirmed the trial court's judgment. SeeStreb v. AMF Bowling Centers, Inc. (Apr. 30, 1998), Franklin App. No. 97APE06-752, unreported.
Appellant filed a Civ.R. 60(B) motion in 94CVH05-3329, which has not been ruled upon. In the motion, appellant alleged that AMF hid their former regional head mechanic, Thomas Schirmer, who had worked on the pinspotting machine shortly after Snodgrass' death.
While the first appeal was pending, appellant filed a second complaint against the same defendants, asserting a claim for spoliation of evidence contending the defendants destroyed evidence relative to his previously litigated product liability claims. Appellant also refiled the negligent design claim which had been voluntarily dismissed during the trial.
On May 13, 1997, AMF filed a motion to dismiss the second complaint pursuant to Civ.R. 12(B)(6) based upon resjudicata. On September 8, 1997, AMF filed a motion for a protective order to preclude further discovery. On September 25, 1997, the court converted AMF's motion to dismiss to a motion for summary judgment.
On March 27, 1998, the trial court determined that appellant was permitted to seek the deposition of Schirmer in Canada if he deposited $2,500 with the clerk of courts to cover reasonable expenses and attorney fees of AMF in the event the court later determined the deposition was unnecessary for the summary judgment motion. Appellant filed a motion for reconsideration of the March 27, 1998 order, requesting that AMF be ordered to produce documents, photographs and reports prior to Schirmer's deposition in order for Schirmer to identify such items since he could not be compelled, as a non-party Canadian citizen, to participate at a trial.
Appellant alleges that, on April 6, 1998, AMF's counsel and the trial judge had ex parte communications regarding the motion for reconsideration. Appellant alleges AMF's counsel told the judge that AMF was unaware of any photographs, accident reports or records of repair that appellant sought. On April 16, 1998, the trial court ordered AMF to respond to appellant's partial response to AMF's motions for summary judgment and to produce documents, photographs and records of repair regarding the pinspotting machine. On April 24, 1998, the trial court overruled as moot appellant's motion for reconsideration, finding that it was satisfied that AMF was not aware of the existence of any photographs or accident reports. Appellant alleges that no documentation in the record supports this finding and the only possible source is the ex parte communication.
On May 4, 1998, appellant again voluntarily dismissed the negligent design claim. On May 14, 1998, the trial court issued a decision finding that all of appellant's claims were barred by res judicata but did not journalize the decision. Appellant filed a motion for reconsideration. On May 18, 1998, appellant voluntarily dismissed the complaint for spoliation of evidence.
On June 8, 1998, AMF filed a motion for attorney fees, pursuant to Civ.R. 11 and R.C. 2323.51, against appellant alleging he had no probable cause to file the spoliation of evidence claim and for refiling the negligent design claim. On June 19, 1998, appellant filed a motion to strike, a motion for sanctions and a memorandum contra AMF's motion for sanctions. Appellant subsequently revised his motion and filed an affidavit to disqualify the trial judge, which was overruled. (See October 27, 1998 Entry.)
After a hearing, the trial court issued a decision sanctioning appellant $16,650 for frivolous conduct based on reasserting the negligent design claim and denied appellant's motion for sanctions. Appellant filed a notice of appeal and raises the following assignments of error:
 I. DEFENDANTS HAVE WAIVED THE ATTORNEY-CLIENT PRIVILEGE BY SUBMITTING INTO EVIDENCE AT A SANCTION HEARING BILLING RECORDS, WHETHER OR NOT REDACTED, AND TESTIMONY, ESPECIALLY IN LIGHT OF THE ONGOING NATURE OF THE LITIGATION.
 II. SHOULD THIS COURT REMAND THE MATTER TO THE TRIAL COURT FOR FURTHER CONSIDERATION OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS, THEN APPELLANT IS ENTITLED TO ENFORCE THE SUBPOENAS DUCES TECUM SERVED UPON DEFENSE COUNSEL.
 III. THE TRIAL COURT ERRED IN NOT ADMITTING INTO EVIDENCE THE TAPE RECORDED ADMISSIONS OF MR. SCHIRMER UNDER OHIO RULES OF EVIDENCE 803(B)(2) AND 803(B)(3) [sic].
 IV. THE TRIAL COURT ERRED IN OVERRULING PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' REQUEST FOR SANCTIONS AND IN GRANTING DEFENDANTS' MOTION FOR SANCTIONS.
 V. ASSUMING ARGUENDO ANY SANCTION IS ALLOWED, THE AMOUNT OF THE SANCTION AWARD TO DEFENDANTS IS EXCESSIVE AND AN ABUSE OF DISCRETION.
 VI. THE TRIAL COURT ERRED IN OVERRULING PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS AND THEIR COUNSEL.
Appellant's first two assignments of error do not identify any trial court error. Rather, in the first assignment of error, appellant requests an advisory opinion. Courts do not issue advisory opinions, but, rather, render judgments which can be carried into effect. Fortner v. Thomas (1970), 22 Ohio St.2d 13,14. Appellant's second assignment of error requests a ruling that he be able to enforce his subpoenas duces tecum. Pursuant to our disposition of appellant's sixth assignment of error, no remand for consideration of appellant's motion for sanctions is necessary. Appellant's first and second assignments of error are not well taken.
By his third assignment of error, appellant contends that the trial court erred in not admitting into evidence the tape recorded admissions of Schirmer under Evid.R. 801(D)(2)(e) and 804(B)(3).[1] Appellant had filed a tape recording and transcript of a telephone conversation between appellant and Schirmer. Appellant proffered the tape at the sanctions hearing but the trial court refused to admit it without Schirmer being present. In the tape recording, Schirmer states that he arrived at Main Lanes at approximately 4:30 or 5:00 in the afternoon on May 15, 1993, the day of the accident.
He further stated that the pinspotting machine was defective and he suggested a remedy but AMF refused because of the cost. Schirmer also stated that he wrote an accident report, pictures were taken and repair records existed. Since the accident, Schirmer stated AMF knew how to reach him, although appellant contends representatives of AMF told him they did not. Appellant believes the tape recording and transcript of the recording are crucial to proving an ongoing conspiracy by AMF to conceal and destroy evidence and form the basis of his spoliation claims.
Appellant argues that the tape recording is admissible because it is not hearsay, but, rather, an admission of a co-conspirator under Evid.R. 801(D)(2)(e), and that it is also an exception because the admissions constitute admissions against interest under Evid.R. 804(B)(3). Appellant contends the recording is admissible to demonstrate that AMF was engaged in an ongoing scheme to conceal evidence.
There is no evidence authenticating the tape and transcript. There is no affidavit or other evidence which authenticates the voice as being Schirmer. Hearsay is defined in Evid.R. 801(C) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Except in those instances specifically provided in Evid.R. 802, hearsay testimony is excluded from admission. A trial court has broad discretion in the admission or exclusion of evidence and, in the absence of an abuse of discretion which results in material prejudice, an appellate court should be slow to reverse evidentiary rulings. Krischbaum v. Dillon (1991), 58 Ohio St.3d 58,66. An abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
The tape recording does not meet the definition of admission by a party opponent. To so qualify, Evid.R. 801(D)(2)(d) requires that the statement be made by an agent or servant during the existence of the agency or employment relationship. In this case, Schirmer was no longer employed by AMF. Nor does Evid.R. 801(D)(2)(e) apply as a statement by a co-conspirator because the statement must be made "during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." The rule requires that the party seeking to introduce an alleged co-conspirator's statement must independently prove that a conspiracy existed by evidence other than the hearsay statement. Here, appellant has not done so.
Similarly, there is no evidence other than Schirmer's statement that the statement is against his pecuniary interest. During the recording, Schirmer states that providing a statement to appellant against AMF will end his business relationship with AMF and negatively affect his pecuniary interest. The language of Evid.R. 804(B)(3) applies only to statements which are "so far contrary" to the declarant's interests that a presumption of trustworthiness is raised. See Evid.R. 804(B)(3). In this case, it is not obvious from the statement itself that it is "so far contrary" to the declarant's interest as to raise a presumption of trustworthiness. In fact, Schirmer had already left AMF's employ over the incident so it was not obvious how much his pecuniary interests would be affected. In the recording, Schirmer stated he left AMF's employ because of a disagreement that resulted when Schirmer wanted AMF to fix the pinspotting machines to prevent further accidents but AMF refused because of the cost. With the lack of an affidavit or other authenticating evidence, the statement does not raise a presumption of trustworthiness since there is no assurance the voice is actually Schirmer's. There is no indication in the record that Schirmer knew he was being recorded. Thus, the trial court did not abuse its discretion in refusing to admit the tape recording and transcript. Appellant's third assignment of error is not well taken.
By the fourth assignment of error, appellant contends that the trial court erred in overruling his motion to dismiss AMF's request for sanctions and in granting AMF's motion for sanctions. The trial court awarded AMF attorney fees pursuant to R.C. 2323.51 and overruled appellant's motion. The analysis of a claim made pursuant to R.C. 2323.51 requires a determination of "(1) whether an action taken by the party to be sanctioned constitutes `frivolous conduct,' and (2) what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party." Ceol v. Zion Indus., Inc.
(1992), 81 Ohio App.3d 286, 291.
R.C. 2323.51 provides, as follows:
(A) As used in this section:
(1) "Conduct" means any of the following:
 (a) The filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action * * *;
* * *
(2) "Frivolous conduct" means either of the following:
 (a) Conduct of an inmate or other party to a civil action * * * that satisfies any of the following:
 (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
 (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
The initial decision as to whether a party's conduct was frivolous involves a factual determination, which is "particularly true if a court must determine if conduct `serves merely to harass or maliciously injure another party to the civil action.'" Lable Co. v. Flowers (1995), 104 Ohio App.3d 227, 233, quoting R.C.2323.51(A)(2)(a). A determination by the court that the conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension of existing law requires a legal analysis. Lable Co., supra.
In Wiltberger v. Davis (1996), 110 Ohio App.3d 46,51-52, this court stated, as follows:
 * * * [N]o single standard of review applies in R.C. 2323.51 cases. The inquiry necessarily must be one of mixed questions of fact and law.
 With respect to purely legal issues, we are persuaded by the * * * line of cases which provide for a de novo
standard of review. When an inquiry is purely a question of law, clearly an appellate court need not defer to the judgment of the trial court. However, we do find some degree of deference appropriate in reviewing a trial court's factual determinations; accordingly, we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings. This standard of review of factual determinations is akin to that employed in a review of the manifest weight of the evidence in civil cases generally, as approved in C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279
* * *.
In this case, the trial court found that appellant acted frivolously, pursuant to R.C. 2323.51(A)(1)(a)(ii), by refiling the negligent design claim. The negligent design claim was voluntarily dismissed during the trial. Appellant argues that the law of the case supported his actions at the time and as soon as the decision on appeal was released, appellant again dismissed the claim. In Streb, this court determined that appellant had volunteered to dismiss the negligent design claim in order to present testimony to show subsequent remedial measures in support of his strict liability claim. The trial court indicated it would not admit such testimony in a negligence claim so appellant volunteered to dismiss the claim, stating:
 MR. STREB: YEAH. I WILL DO THAT TO GET THIS WITNESS IN THE CASE. BECAUSE, FRANKLY, I THINK THIS IS AN IMPORTANT WITNESS, AND THIS IS PRIMARILY A STRICT PRODUCTS LIABILITY ACTION. AND THE NEGLIGENCE CLAIM IS NOT SO IMPORTANT TO THE PLAINTIFF'S CASE THAT I CANNOT DISPENSE WITH IT. [Streb, at 13.]
In our earlier decision, this court did not make any determination as to the validity of refiling the claim, and there is no relation between this court's earlier opinion and appellant's decision to refile or dismiss the negligent design claim. The law of the case did not support refiling the claim. Although the negligent design claim may have been dismissed without prejudice pursuant to Civ.R. 41(A)(1)(b), the claim was barred by res judicata. The doctrine of res judicata provides that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, syllabus. In Grava, the court stated that the doctrine ofres judicata bars not only subsequent actions involving the same legal theory of recovery as the previous action, but also claims which could have been litigated in the previous action:
 * * * "It has long been the law of Ohio that `an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit'" (emphasis sic) (quoting Rogers v. Whitehall [1986], 25 Ohio St.3d 67, 69, 25 OBR 89, 90, 494 N.E.2d 1387, 1388). We also declared that "[t]he doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." Id.
Grava, at 382, quoting Natl. Amusements, Inc. v. Springdale
(1990), 53 Ohio St.3d 60, 62. Appellant argues that res judicata
does not bar a claim when the prior judgment was based upon fraud and destruction of evidence. Even assuming arguendo, appellant's allegations are true, refiling the negligent design claim is not the proper method of attacking the prior judgment.
Appellant's claim for negligent design arose from the same nucleus of facts that was the basis of the first action. The final judgment in that action bars appellant's negligent design claim. The appellant in Grava argued that barring the action is unfair; however, the Supreme Court of Ohio responded that it was not an injustice, rather, it provides "parties with an incentive to resolve conclusively an entire controversy involving the same core of facts, such refusal establishes certainty in legal relations and individual rights, accords stability to judgments, and promotes the efficient use of limited judicial or quasi-judicial time and resources." Grava, at 383-384.
Thus, since the negligent design claim was barred by resjudicata, refiling the claim met the definition of "frivolous conduct" in R.C. 2323.51(A)(2)(a)(ii) because it was not warranted under existing law and cannot be supported by a good-faith argument for an extension, modification or reversal of existing law. The trial court did not find that the negligent design claim was refiled merely to harass or maliciously injure AMF. The trial court did not err in overruling appellant's motion to dismiss nor in granting AMF's motion for sanctions. Appellant's fourth assignment of error is not well taken.
By the fifth assignment of error, appellant contends that the trial court abused its discretion in determining the amount to be imposed as a sanction because the amount is excessive. In Wiltberger, at 52, this court stated that, if a trial court has found frivolous conduct, the decision to assess a penalty lies within the trial court's discretion. In Wiltberger, this court determined that the record must demonstrate the necessity of incurring additional attorney fees as a direct result of defending the frivolous claim as distinguished from the need to defend the lawsuit in general.
In this case, the trial court awarded $16,650 for preparing an answer, a motion to dismiss (which was converted to a motion for summary judgment), related documents and the motion for sanctions; however, AMF did not file an answer to the complaint and only a portion of the motion for sanctions was sustained, since the court found the spoliation claim was not frivolous. AMF's counsel billed $19,567.95 for all the work related to the motion to dismiss and $13,749.50 for the motion for sanctions. While counsel did file the motions and two reply memoranda, even $16,650 is excessive for two motions and two reply memoranda and related work, since the motions pertained to both the negligent design claim and the spoliation of evidence claim but the trial court only found refiling the negligent design claim to be frivolous. The trial court denied the motion as to the spoliation of evidence claim. Appellant's fifth assignment of error is well taken. On remand, the court should determine the amount of attorney fees attributable only to AMF's costs which were incurred to respond to appellant's negligent design claim.
By the sixth assignment of error, appellant contends that the trial court erred in overruling his motion for sanctions against AMF. Appellant's claims are based upon an allegation that AMF acted frivolously in defending his spoliation claim and that AMF's counsel had ex parte communications with the trial court. Appellant contends that AMF acted frivolously in defending the claim because their actions were based upon fraud and collusion. However, the trial court determined that the record did not contain sufficient Civ.R. 56(C) evidence of AMF's fraud. At the sanctions hearing, appellant submitted a tape recording and transcript of a telephone conversation between himself and Schirmer which it is claimed, supports this theory; however, as discussed in the third assignment of error, the tape was not admissible evidence.
The record does not contain any evidence of ex parte
communications between AMF's counsel and the trial court. The Chief Justice of the Supreme Court of Ohio overruled appellant's motion to disqualify the trial judge. At the sanctions hearing, AMF's counsel testified that there were no improper communications with the judge (Tr. 71-72) and appellant's own expert testified there was insufficient evidence that AMF's counsel violated Civ.R. 11, although he did believe that the trial court's entry, which appellant contends is based on the ex parte communication, was not supported by the record. (Tr. 117.) Thus, there is insufficient evidence to support an award of sanctions against AMF and the trial court did not err. Appellant's sixth assignment of error is not well taken.
For the foregoing reasons, appellant's first, second, third, fourth and sixth assignments of error are overruled, appellant's fifth assignment of error is sustained and the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part; and this cause is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part and causeremanded.
 _____________________________ PRESIDING JUDGE BOWMAN
TYACK and DESHLER, JJ., concur.
[1] Appellant identified Evid.R. 803(B)(2) and 803(B)(3) in his assignment of error but argued the application of Evid.R. 801(D)(2)(e) and 804(B)(3).