JOURNAL ENTRY and OPINION
Plaintiff-appellant John Nix, executor of the Estate of John R. Master, and appellants Harold Pollock, Harold Pollock Co., L.P.A. and John Nix, individually (hereinafter "appellants"), appeal from the order of the trial court which awarded sanctions against the appellants, jointly and severally, and in favor of the defendant-appellee, Sue Sazima, in the amount of $78,504.81 pursuant to R.C. 2323.51 for frivolous conduct, which the court found served merely to harass or maliciously injure the appellee during the course of the instant litigation.
This lawsuit arose out of a relationship between Dr. John Master (since deceased) and appellant John Nix. Nix came to know Dr. Master through Nix's romantic relationship with Dr. Master's housekeeper. Eventually, Nix formed a "business partnership" with Dr. Master for the purpose of developing some property that belonged to Dr. Master, which was adjacent to the Masters' residence in the Old Brooklyn neighborhood of Cleveland.
The appellee was a relative of Dr. Master. At some point in time, the appellee became concerned that Dr. Master was not in full command of his faculties and was being taken advantage of by Nix. The appellee approached attorney Paul Chalko, who was the long time family attorney of the Masters, and requested that he initiate the requisite legal proceedings to have the appellee appointed as Dr. Master's guardian.[1]
This action was, commenced as a legal malpractice lawsuit against attorney Paul Chalko. Additionally, the complaint included causes of action against appellee Sazima for tortious interference with business relations and civil conspiracy. Essentially, the complaint alleged that Chalko and Sazima conspired to have Sazima appointed as Dr. Master's guardian in order that they could plunder the assets of the estate. Dr. Master passed away during the pendency of these proceedings, at which point his estate, with Nix as the executor, was substituted as a party.[2]
At trial, the trial court entered a directed verdict in favor of the appellee on November 30, 1995. Within the twenty-one days required by R.C. 2323.51, the appellee filed a motion for attorney fees as sanctions for frivolous conduct. All of the proceedings in the case were then stayed during the pendency of the appeal by co-defendant Paul Chalko. This court ultimately determined that there was insufficient evidence to support the verdict returned against co-defendant Chalko and, therefore, that the trial court erred in not also entering a directed verdict in favor Chalko's favor. SeeMaster v. Chalko (June 5, 1997), Cuyahoga App. No. 70527, unreported.
Subsequent to a lengthy evidentiary hearing, the trial court granted appellee's motion for sanctions in the amount of $78,504.81 on February 3, 1999. The amount of sanctions represented the legal fees incurred by the appellee in defending the instant action, as well as in prosecuting her R.C. 2323.51 motion for sanctions. It is from this February 3, 1999 order of the trial court that the instant appeal was taken.
The appellants' brief is nonconforming as it fails to delineate any assignment of errors in their brief for this court's review as required by App.R. 16(A)(3) and Loc.R. 16 of the Eighth District Court of Appeals.[3] Nonetheless, this court will review the order from which the appeal is taken under the appropriate abuse of discretion standard.
R.C. 2323.51 provides in pertinent part:
 (2) An award may be made pursuant to division (B) (1) of this section upon the motion of a party to a civil action or an appeal of the type described in that division or on the court's own initiative, but only after the court does all of the following:
 (a) Sets a date for a hearing to be conducted in accordance with division (B)(2)(c) of this section, to determine whether particular conduct was frivolous, to determine, if the conduct was frivolous, whether any party was adversely affected by it, and to determine, if an award is to be made, the amount of that award;
 (b) Gives notice of the date of the hearing described in division (B)(2)(a) of this section to each party or counsel of record who allegedly engaged in frivolous conduct and to each party who allegedly was adversely affected by frivolous conduct;
 (c) Conducts the hearing described in division (B)(2)(a) of this section in accordance with this division, allows the parties and counsel of record involved to present any relevant evidence at the hearing, including evidence of the type described in division (B)(5) of this section, determines that the conduct involved was frivolous and that a party was adversely affected, and then determines the amount of the award to be made.
The initial decision of whether a party's conduct is frivolous is a factual determination, particularly if the alleged conduct was intended to harass or maliciously injure. Ceol v.Zion Indus., Inc. (1992), 81 Ohio App.3d 286, 291, 610 N.E.2d 1076,1078-1079; Burrell v. Kassicieh (June 5, 1998), Seneca App. No. 13-97-54, unreported. Because the trial judge has the benefit of observing the course of proceedings and is familiar with the parties and attorneys involved, a reviewing court is obligated to defer to the trial court's findings that one party harassed or injured another. Ceol, supra, at 292, 610 N.E.2d at 1079-1080. Alternatively, a trial court's determination of whether a party has a good-faith argument under the law is a question of law, which an appellate court may competently review. Lable Co. v. Flowers
(1995), 104 Ohio App.3d 227, 233, 661 N.E.2d 782, 785-786.
In either case, appellate review of a trial court's decision to impose sanctions pursuant to Civ.R. 11 and R.C. 2323.51, and upon whom to impose such sanction, is on an abuse-of-discretion standard. See, Lewis v. Celina Financial Corp. (1995),101 Ohio App.3d at 464, 471, 473, 655 N.E.2d at 1337-1339; Burrell v.Kassicieh, supra. An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary or unconscionable and is more than an error in law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140,1141-1142. In the instant case, the trial court awarded sanctions after making a finding that the appellants pursued litigation against the appellee for the express purpose of harassing her. Therefore, the abuse of discretion standard of review is the appropriate standard in this case.
A court may award reasonable attorney's fees to any party to a civil action who is adversely affected by another party's frivolous conduct. R.C. 2323.51(B)(1). Conduct is defined as the "filing of a civil action, asserting a claim, defense, or other position in connection with a civil action, or taking any other action in connection with a civil action." R.C. 2323.51(A)(1). Frivolous conduct is the conduct of a party to a civil action or his or her counsel which satisfies either of the following:
 (i) It obviously serves merely to harass or maliciously injure another party to the civil action * * * including, but not limited to, causing * * * a needless increase in the cost of litigation.
 (ii) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law * * *.
R.C. 2323.51(A)(2)(a). The wording of R.C. 2323.51 is permissive. Whether or not to impose sanctions, pursuant to this statute, rests within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion.Riley v. Langer (1994), 95 Ohio App.3d 151, 642 N.E.2d 1.
A trial court is required to engage in a two-part inquiry when presented with a R.C. 2323.51 motion for sanctions. Initially, it must determine whether an action taken by the party against whom sanctions are sought constituted frivolous conduct. Second, if the conduct is found to be frivolous, the trial court must determine what amount, if any, of reasonable attorney's fees necessitated by the frivolous conduct is to be awarded to the aggrieved party. Lable Co. v. Flowers (1995), 104 Ohio App.3d 227,232-233, 661 N.E.2d 782. Whether frivolous conduct occurred is a factual determination. Id. Frivolous conduct is defined in objective terms. Lewis, supra.
A review of the record indicates that the trial court was presented with overwhelming evidence that the appellants pursued litigation against the appellee in an abusive and vexatious manner. This is precisely the type of lawsuit for which the award of attorney fees under R.C. 2323.51 is designed. Additionally, the sheer volume of pleadings and discovery requests filed by the appellants were directly responsible for the large amount of attorney fees incurred by the appellee in this case.
Despite the fact that Mr. Nix and his attorneys have filed in excess of twenty lawsuits against an array of defendants arising out of the same series of transactions, and have accused literally dozens of people, including prominent public officials, of being involved in intricate and high-level conspiracies to loot the modest assets of the respective Masters' estates, they have repeatedly been stymied in their efforts to obtain judgments on these claims as they inevitably prove to be meritless after the courts are able to sift through the sensational allegations and examine the evidence. See Master v. Sword, (Nov. 9, 1995) Cuyahoga App. No. 68297; Master v. O'Malley (Apr. 4, 1996), Cuyahoga App. No. 68895, unreported; Master v. Chalko (June 5, 1997), Cuyahoga App. No. 70527, unreported; Nix v. Chalko (Feb. 19, 1998), Cuyahoga App. No. 72023, unreported; State v. Curran (Sept. 23, 1998), Cuyahoga App. No. 75261, unreported.
The record is replete with evidence of malicious intent on the part of the appellants during their pursuit of the instant litigation against the appellee so as to justify the imposition of sanctions under R.C. 2323.51. In a transparent effort to professionally embarrass the appellee, a Cleveland police officer, the appellants attempted to depose representatives of the Cleveland Police Department, the Civil Service Commission, and the Federal Bureau of Investigation. Additionally, the appellants sought to depose Mayor Michael R. White, the mayor's chief of staff, Lavonne Sheffield-Turner, and the City of Cleveland's Director of Safety, William Denihan. There was not a shred of evidence presented at the sanctions hearing by the appellants which tended to indicate that any of these officials possessed any information that was in any manner relevant to the claims brought against the appellee. The appellants, in furtherance of their character assassination objectives, chose to write a letter to the Cuyahoga County Prosecutor stating that the appellee was a "dirty cop" and asking that she be criminally investigated. The appellants even filed a motion with the trial court asking that there be a "referral" to the county prosecutor for the purposes of a criminal investigation. Once again, the appellants failed, throughout the entire course of this litigation, to either substantiate these charges or to demonstrate their relevance to the proceedings.
Another tactic of questionable merit employed by the appellants was to file two declaratory judgment actions seeking a declaration that the appellee was not entitled to a defense or to indemnification in the instant matter. Furthermore, appellants' attorney improperly directly contacted the appellee's insurers in an attempt to deprive her of coverage. If indeed the appellants believed that the appellee would ultimately be found liable for the exorbitant amount of damages which was requested, it would not have been in their interest to preclude the possibility of insurance coverage. The only possible motivation behind the attempt by the appellants to deprive the appellee of insurance coverage were intimidation and harassment of the appellee.
In yet another attempt to maliciously injure and intimidate the appellee, the appellants instituted a lawsuit against her attorney, lobbing the same sort of charges of misconduct and conspiracy as have been lodged against literally dozens of other actors in this on-going scenario. Again, appellants' attorney, in an act of what can only be characterized as extreme bad faith, contacted the appellee's attorney's insurer in an improper attempt to deprive the attorney of insurance coverage.
Perhaps the most outrageous and despicable example of misconduct employed by the appellants took place at trial, after the trial court entered a directed verdict in favor of the appellee. According to both the appellee and her attorney, appellants' attorney approached the appellee at the appellee's trial table after the directed verdict had been entered and told her "I will sue you again and again." Furthermore, the appellee testified that Nix told her that he would sue her again if she came anywhere near her uncle.
The appellants state in their brief that the imposition of sanctions is tantamount to "destroy[ing] a plaintiff's access to the courtroom." The brief characterizes the appellants' flagrant and immoral attacks on the appellee, both in and out of the courtroom, as "zealous advocacy." The tactics employed by the appellants go far beyond zealous representation. At best, appellants' attorney has demonstrated himself to be an obnoxious litigator bent on abusing the courts to further an illegitimate agenda.
In their brief filed with this court, the appellants engage in still further mudslinging and make unfounded accusations against the trial court in an attempt to discredit the trial judge — a judge with an excellent reputation both in legal circles and throughout the community. This court refuses to be dragged down into the morass of innuendo, conspiracy and aspersion into which the appellants' brief descends. It is high time that the appellants are called to task for their abuse of the legal process and their indifference to the havoc they have wreaked in the lives of any number of individuals through their vindictive, scorched earth litigation strategy. It would be far more chilling on the rights of litigants for the courts to look the other way and fail to sanction this sort of abusive and reprehensible conduct.
Appellant Nix also contends that he cannot be held personally liable under R.C. 2323.51 because of the fact that he was not a party to the litigation instituted against the appellee in his individual capacity. R.C. 2323.51 authorizes the imposition of sanctions against a party to a "civil action." The statute's authorizing of the trial court to award attorney fees to any party adversely affected by the conduct of another party or another party's counsel, by allowing for the imposition of sanctions against the client, counsel or both, provides the trial court with a mechanism to place blame directly where fault lies. Cseplo v.Steinfels (1996), 116 Ohio App.3d 384, 688 N.E.2d 292. In BeaverExcavating Co. v. Perry Twp. (1992), 79 Ohio App.3d 148, 153,606 N.E.2d 1070, the court concluded "that for the purposes of implementation of R.C. 2323.51, contempt proceedings against a non-party witness constitute a civil action." Thus, it is not relevant that Nix was not a party to the underlying lawsuit in his individual capacity, as long as he was properly made a party to the hearing on appellee's motion for sanctions. The record clearly indicates that Nix was given proper notice that he was a party to the contempt proceedings and that he was given the opportunity to retain his own legal counsel. Therefore, sanctions were properly awarded against appellant Nix in his individual capacity.
At oral argument, the appellants' counsel raised the issue of whether the trial court had jurisdiction over this case on the day that the sanctions hearing was held given that a notice of appeal of the order of this court of December 1, 1998, which sua sponte dismissed appellants' appeal of several interlocutory orders of the trial court for lack of a final and appealable order, was filed with the Supreme Court by the appellants one day prior to the date of the sanctions hearing in question.
"When a case has been appealed, the trial court retains all jurisdiction not inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment." State exrel. Neff v. Corrigan (1996), 75 Ohio St.3d 12, 15, 661 N.E.2d 170,174, citing Howard v. Catholic Soc. Serv. of Cuyahoga Cty., Inc. (1994), 70 Ohio St.3d 141, 147, 637 N.E.2d 890, 895. "Absent a patent and unambiguous lack of jurisdiction, a court having general subject-matter jurisdiction can determine its own jurisdiction, and a party challenging the court's jurisdiction has an adequate remedy at law by appeal." State ex rel. Enyart v. O'Neill (1995),71 Ohio St.3d 655, 656, 646 N.E.2d 1110, 1112.
S.Ct.Prac.R. II, Sec. 2(A)(3)(a)(ii) provides a mechanism whereby an appellant may seek an immediate stay of the court of appeals' judgment by filing a motion for stay of the court of appeals' judgment contemporaneously with the notice of appeal. If such a motion is filed, and the court subsequently grants the motion, then the judgment of the court of appeals is stayed pending a determination by the Supreme Court whether to exercise its jurisdiction to hear the appeal. In the instant case, the appellants filed no motion for stay of the court of appeals' judgment along with the notice of appeal. Thus, there was no immediate stay of the judgment of the court of appeals and the trial court had jurisdiction to proceed with the previously scheduled sanctions hearings. Ultimately, on March 3, 1999, the Supreme Court disallowed the appellant Nix's discretionary appeal.
Therefore, we hold that a trial court is not precluded from exercising jurisdiction in a case where a notice of appeal is filed with the Supreme Court from a judgment of the court of appeals until such time as either a motion for immediate stay of the court of appeals' judgment is granted or when the Supreme Court decides to allow a discretionary appeal. To hold otherwise would be to ignore the plain wording of S.Ct.Prac.R. II, Sec. 2(A)(3)(a) and would frustrate the ability of the trial courts to effectively manage their dockets by needlessly mandating automatic stays whenever a party filed a notice of appeal with the Supreme Court concerning an interlocutory appeal or other tangential matter. If, as the appellants maintain, the mere perfecting of a notice of appeal with the Supreme Court was sufficient to stay the proceedings of the trial court, there would be no need for the provisions of S.Ct.Prac.R. II, Sec. 2(A)(3)(a)(ii) permitting an appellant to file a motion for immediate stay along with the notice of appeal.
S.Ct.Prac.R. II, Sec; 2(D)(1) divests the court of appeals of jurisdiction, except to take action in aid of the appeal after an appeal from the court of the appeals is perfected with the Supreme Court. The rule does not state that the trial court is divested of jurisdiction. The obvious inference thereof is that there is no automatic stay of trial court proceedings occasioned by the mere filing of a notice of appeal with the Supreme Court.
The amount of attorney fees awarded by the trial court was reasonable given the expertise of appellee's trial counsel and the amount of hours counsel was forced to work to defend this case. The trial court did not abuse its discretion in calculating the amount of attorney fees owing and concluding that they were "reasonably incurred" by the appellee, after receiving all evidence relevant to that issue. R.C. 2323.51(B)(3)(b). Indeed, the trial court could have imposed additional sanctions in the form of court costs and "other reasonable expenses incurred in connection with the civil action" in addition to attorney fees, but, for whatever reason, chose not to do so R.C. 2323.51(B)(1).
For all of the foregoing reasons, it cannot be said as a matter of law that the trial court abused its discretion when it awarded the appellee $78,504.81 in sanctions, jointly and severally, against the appellants pursuant to R.C. 2323.51.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of Appellate Procedure.
 ___________________________ MICHAEL J. CORRIGAN, JUDGE
 LEO M. SPELLACY. J., CONCURS., TIMOTHY E. McMONAGLE. P.J., CONCURSIN JUDGMENT ONLY.
[1] The appellee voluntarily withdrew this application shortly after Dr. Master applied to have Nix appointed as conservator of his estate.
[2] Despite the fact that Nix and Dr. Master had known each other for a relatively short period of time prior to Dr. Master's death, Nix was also the sole beneficiary of the estate.
[3] This court has already stricken two of the appellants' briefs for failing to conform with the requirements of App.R. 19(A) and Loc.R. 16 of the Eighth District Court of Appeals.