[Cite as *AMG Peterbilt Group, L.L.C. v. Apple Growth Partners, Inc.*, 2025-Ohio-4754.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

AMG PETERBILT GROUP, LLC,  :

    Plaintiff-Appellee,  :

                                  No. 114704

    v.  :

APPLE GROWTH PARTNERS, INC.,
ET AL.,  :

    Defendants-Appellees.  :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART; REMANDED
**RELEASED AND JOURNALIZED:** October 16, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-962948

---

### *Appearances:*

Brennan, Manna, & Diamond, LLC, and Daniel J. Rudary, *for appellees,* Apple Growth Partners, Inc., Apple Growth Partners, LLC, and Charles Mullen.

Brennan, Manna, & Diamond, LLC, and Donald W. Davis, Jr., and Elizabeth Shively Boatwright, *for appellee/cross-appellant* Michael Sweeney.

David A. Campbell, *pro se.*

MARY J. BOYLE, J.:

{¶ 1} Appellant/cross-appellee David A. Campbell ("Campbell"), pro se, appeals the trial court's decision granting the motion for sanctions filed by defendants-appellees Apple Growth Partners, Inc., Apple Growth Partners LLC, and Charles Mullen ("Mullen") (collectively "AGP"), and defendant-appellee/cross-appellant Michael Sweeney ("Sweeney"). Campbell contends the trial court erred when it imposed a sanctions order against him in the amount of $104,171.27. AGP counters that the award in its favor was proper but the award to Sweeney should be reversed because the sanctions order was imposed without first holding a hearing on Sweeney's motion. In his cross-appeal, Sweeney also contends that the sanctions award with respect to him should be reversed because the court did not hold a hearing on his motion prior to imposing sanctions. We agree with AGP and Sweeney, and for the reasons that follow, we affirm the sanctions award with respect to AGP's motion, reverse the portion of the award regarding Sweeney's motion, and remand the matter for a hearing on Sweeney's motion for sanctions.

I. **Facts and Procedural History**

{¶ 2} In January 2018, the plaintiff in the underlying action, AMG Peterbilt Group, LLC ("AMG"), a franchisee of Peterbilt, retained AGP to provide it with accounting services. AGP, Mullen (Chairman of AGP), and Sweeney (banking advisor) also served AMG by acting as a "business advisory committee." The committee additionally included AMG's CFO ("CFO") and outside counsel. The purpose of the business advisory committee was to provide AMG with "legal,

accounting, financial and banking advice" and "to provide business advice to AMG on . . . all other aspects of AMG's business." (Amended complaint, July 8, 2022.)

{¶ 3} AMG had "cash flow" problems and eventually became "out of trust" with Peterbilt.[1] In March 2019, Peterbilt sent AMG a letter titled, "AMG PETERBILT COMPLIANCE WAIVER." The waiver states that it was furnished to "satisfy the auditors concern of being out of trust at December 31, 2018." In April 2019, AMG provided AGP with a letter signed by AMG's CEO and CFO representing to AGP that AMG had "complied with all aspects of contractual agreements that would have a material effect on the financial statements in the event of noncompliance."

{¶ 4} Ultimately, AMG ceased it operations and sold substantially all of its assets to Ohio Machinery Co. ("Ohio Machinery") by way of an Asset Purchase Agreement ("APA") executed in December 2019. Campbell was one of the attorneys who represented AMG in connection with the asset sale to Ohio Machinery. The APA included a detailed description of the assets sold to Ohio Machinery, as well as those retained by AMG. Specifically, Section 2.1 of the APA, "Purchased Assets," provides that Ohio Machinery

> shall purchase, pay for and accept from [AMG], all of the assets, properties and rights of [AMG] Related to the Business (except as otherwise provided in Section 2.2 hereof.). . . The assets of [AMG] purchased by [Ohio Machinery] pursuant to this [APA] shall include the following assets of the Business (except as otherwise provided in

---

[1] "Out of trust" refers to AMG's failure to timely remit payments for trucks purchased by AMG customers to Peterbilt.

Section 2.2 hereof) as they exist on the Closing Date (collectively, the "Purchased Assets"):

. . .

(j) all other assets, properties and rights of [AMG] of every kind, nature, character and description not specifically set forth in this Section 2.1 and whether or not similar to the items set forth in this Section 2.1, which are not specifically included in Retained Assets.

Section 2.2 of the APA, "Retained Assets," does not include any third-party claims or causes of action as being exempted from the asset sale. Likewise, the accompanying schedules to the APA omit any reference to legal claims, or causes of action, as being among AMG's retained assets.

{¶ 5} Following AMG's sale to Ohio Machinery, Campbell represented AMG in a 2019 lawsuit filed by AMG's former CFO against AMG to be compensated for unused paid time off.[2] Campbell filed a counterclaim on AMG's behalf against the CFO "based upon his use of trade secrets" and "his breach of duty of loyalty." (Tr. 93-94.) Campbell also deposed the CFO, Mullen, and Sweeney in this litigation. As a result of this litigation, Campbell believed that members of AMG's business advisory committee (AGP and Sweeney) engaged in some type of misconduct. Campbell sent an email to AGP's counsel after taking Mullen's deposition, asking if AGP had any interest in "resolving this matter." (Motion for sanctions, Sept. 20, 2024.) AGP's counsel replied to Campbell explaining why AGP believed AMG's purported claims against it were frivolous.

---

[2] The CFO was employed at AMG from 2017-2019.

{¶ 6} Ultimately, Campbell solicited initial counsel to represent AMG in its malpractice action against AGP and Sweeney. In February 2022, AMG's initial counsel sent correspondence to AGP's counsel advising that he had been retained to prosecute AMG's claims against AGP and Sweeney. In the email sent to AGP's counsel and copied to Campbell, initial counsel stated, "To clarify a few things, [Campbell] remains counsel for AMG, in fact he recently concluded the [CFO] litigation. He referred the client to me for claims and potential litigation against [outside counsel, AGP, and Sweeney]." (Motion for sanctions, Sept. 20, 2024.)

{¶ 7} In May 2022, initial counsel filed a complaint in the underlying case on behalf of AMG against AGP and Sweeney. AMG's complaint asserted claims for professional negligence and other causes of action based on AGP's accounting services and Sweeney's banking services to AMG during the period of 2017-2019. While the complaint was signed by initial counsel, Campbell participated in drafting the complaint and gave initial counsel "some of the factual allegations." (Tr. 124.)

{¶ 8} In August 2022, AMG filed an amended complaint, which named Apple Growth Partners, LLC as an additional party defendant. Both AGP and Sweeney filed answers to the amended complaint. Additionally, AGP filed a counterclaim and third-party complaint. In its counterclaim, AGP asserted a frivolous conduct claim against AMG and initial counsel, alleging that "AMG's Amended Complaint consists of allegations or other factual contentions that have no evidentiary support or are not likely to have evidentiary support after a

reasonable opportunity for further investigation or discovery." (AGP's amended answer, counterclaim, and third-party complaint, Apr. 14, 2023.)

{¶ 9} In April 2023, the trial court ordered AMG to respond to AGP's written discovery requests, which were served on AMG and were pending since June 2022. After obtaining some discovery from AMG, AGP moved for summary judgment on AMG's amended complaint in August 2023. Sweeney joined in AGP's arguments by filing a companion motion for summary judgment and incorporating AGP's motion for summary judgment.[3] In the motion, AGP argued that the accounting malpractice and other claims asserted in AMG's amended complaint accrued prior to AMG's sale of substantially all its assets to non-party Ohio Machinery in December 2019. As a result, AGP argued that these claims were included among the assets sold to Ohio Machinery, and AMG had no standing to prosecute its claims against them as the real party in interest. Specifically, AGP stated:

> AMG sold substantially all of its assets — including any then-accrued legal claims — to non-party [Ohio Machinery] in December 2019. Because the vast majority of AMG's claims against [AGP] accrued prior to the subject asset sale, AMG is not the real party in interest and lacks standing to assert those claims in this litigation. Additionally, the sole post-[asset] sale claim asserted by AMG is based on [AGP's] response to a federal grand jury subpoena and is barred by the absolute immunity afforded to grand jury witnesses and the common-law litigation privilege.

(Motion for summary judgment, Aug. 4, 2023.)

---

[3] Any reference to AGP's motion for summary judgment includes reference to Sweeney's motion for summary judgment unless otherwise indicated.

{¶ 10} AMG did not file an opposition to this motion. Then in December 2023, Campbell filed a motion on AMG's behalf, requesting the court stay the matter for 45 days to permit AMG to locate new counsel. In February 2024, initial counsel filed a motion to withdraw, which the court granted after a hearing. The court then gave AMG until March 29, 2024, to oppose summary judgment. Ultimately, AMG filed an opposition to AGP's motion for summary judgment and a motion for leave to withdraw AMG's defaulted admissions in April 2024.[4] In its brief in opposition, which was signed by Campbell, AMG did not address the argument that it was not the real party in interest, but rather stated that initial counsel was "dilatory in this lawsuit." (Memorandum in opposition, Apr. 1, 2024.)

{¶ 11} In August 2024, the trial court granted AGP's and Sweeney's motions for summary judgment and denied AMG's motion to withdraw its defaulted admissions. The trial court found that

> [b]y the contract, [AMG] sold to [Ohio Machinery], "all of the assets, properties and rights of seller related to [its] business." Those assets include a list of specific items plus "all other assets, properties and rights of [AMG] of every kind, nature, character and description not specifically set forth in this Section 2.1 and whether or not similar to the items set forth in this Section 2.1, which are not specifically" excluded as retained assets in Section 2.2. The retained assets did not include (1) the contracts AMG had with the defendants and (2) any causes of action, legal claims or prospective lawsuits. Since they were not retained by AMG, any such assets became the property of [Ohio Machinery] upon executing the asset purchase.
>
> A "cause of action" is defined as a group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person. *Estate of Johnson v.*

---

[4] Because AMG failed to respond to these requests, they were deemed admitted by operation of law under Civ.R. 36(A)(1).

*Randall Smith, Inc.*, 2013-Ohio-1507, ¶15, 135 Ohio St. 3d 440, 443. A cause of action is an asset. *Chrysler Grp., L.L.C, v. Dixon*, 2017-Ohio-1161, Cuyahoga County App. No. 104628, ¶17. Here, AMG's causes of action had already accrued by the time the business was sold, and they were not excepted from the asset purchase. As of December 9, 2019, therefore, AMG's causes of action belonged to [Ohio Machinery].

(Footnotes omitted.) (Judgment entry, Aug. 2, 2024.)

{¶ 12} Following the court's grant of summary judgment in its favor, AGP dismissed its pending counterclaims and third-party claims. AMG then filed an appeal to this court from the trial court's summary judgment order on September 12, 2024. *AMG Peterbilt Group, LLC v. Apple Growth Partners, Inc., et al.*, 8th Dist. Cuyahoga No. 114353. On September 20, 2024, AGP filed its motion for sanctions, in the trial court, against AMG and Campbell. In its motion, AGP argued that Campbell, who had represented AMG in connection with the underlying asset sale to Ohio Machinery, frivolously pursued AMG's claims despite the fact that they were included in the sale of substantially all of AMG's assets years earlier. AGP contended that even though Campbell was aware of AGP's standing arguments when he asked the court to stay the proceeding, he took no action to dismiss AMG's frivolous claims or to respond to AGP's arguments on the merits.

{¶ 13} On September 25, 2024, this court stayed AMG's appeal and remanded the case "solely for the trial court to rule on the pending motion for sanctions." (Motion No. 578095 (Sept. 25, 2024).) That same day, Sweeney filed a companion motion for sanctions.[5] Campbell filed a brief in opposition to sanctions

---

[5] Any reference to AGP's motion for sanctions includes reference to Sweeney's motion for sanctions unless otherwise indicated.

on November 15, 2024. In the opposition, he essentially argued that initial counsel abandoned the case; AGP cannot prove that "no reasonable lawyer could argue the claim"; AMG's claims are meritorious; and AGP has hid behind the APA rather than providing any sworn testimony on the underlying facts. Campbell failed to argue that accounting malpractice claims are not assignable under Ohio law. Then, on November 25, 2024, the day before the sanctions hearing, Campbell filed supplemental authority, raising for the time that accounting malpractice claims cannot be assigned. AGP filed a response to Campbell's notice of supplemental authority, arguing that Campbell relied on new arguments not previously made, failed to cite a single case in Ohio holding that accounting malpractice claims are not assignable, and every jurisdiction that has considered Campbell's argument has rejected it. The matter proceeded to a hearing before the trial court the next day.

{¶ 14} At the beginning of the hearing, the court stated that it would only hear argument and evidence related to AGP's motion for sanctions. The court declined to consider Sweeney's companion motion because of its concern about exceeding the scope of this court's remand order. The hearing then proceeded with respect to AGP's motion only. The following evidence was adduced.

{¶ 15} AGP's counsel testified that AGP incurred $95,105.50 in legal fees and $9,065.77 in costs associated with this matter. "And in preparation for the hearing, [AGP's counsel] reviewed the bills again and confirmed what [he] had originally believed at the time the bills had been sent, which is that the time is reasonable and the costs were reasonable considering all the factors we're supposed to consider

under Rule 1.5 of the Rules of Professional Conduct." (Tr. 42.) According to AGP's counsel, early on, AMG "made clear that it was demanding upwards of 20 million dollars in this lawsuit." (Tr. 43.) It took AGP's counsel time "to sift through years worth of communications, records, business records, accounting records, to properly defend this case was extensive." (Tr. 43.) Furthermore, in his opposition to AGP's motion for summary judgment, Campbell did not raise any issue about the assignability of accounting malpractice claims.

{¶ 16} On cross-examination, AGP's counsel testified that this lawsuit should have never been filed because there was a standing issue and AMG sold its accounting malpractice claim to Ohio Machinery. AGP's counsel acknowledged that it was initial counsel who signed the complaint, not Campbell, and it was initial counsel who represented AMG until he withdrew in February 2024. AGP's counsel further acknowledged that AGP dismissed its sanctions claims against initial counsel and AMG. AGP's counsel explained:

> [I]t became clear to us when we met with [initial counsel] in June of 2023, before we moved for summary judgment, to advise him of what our argument was going to be based on the asset purchase agreement, that he had no idea that AMG had sold its accrued causes of action to Ohio Machinery. We put the schedules to the APA together with the contract itself for the first time in May, 2023. When those were produced to us after we had to move to compel responses to discovery, we met with [initial counsel], I believe on June 8th of 2023 to share our findings and advised him of what our position was, and [initial counsel] told us that he would confer with his client, provide us with a response.
>
> Ultimately no meaningful response was provided but then that's when [initial counsel] sort of fell off from the case, and in our view, [initial counsel], once he learned that AMG no longer had standing to prosecute this case, did not take any further meaningful action to