[Cite as *AMG Peterbilt Group, L.L.C. v. Apple Growth Partners, Inc.*, 2025-Ohio-4754.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

AMG PETERBILT GROUP, LLC,                  :

    Plaintiff-Appellee,                  :

                                     No. 114704

    v.                                   :

APPLE GROWTH PARTNERS, INC.,
ET AL.,                                    :

    Defendants-Appellees.                :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN
                PART; REMANDED
**RELEASED AND JOURNALIZED:** October 16, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-962948

---

### *Appearances:*

Brennan, Manna, & Diamond, LLC, and Daniel J. Rudary, *for appellees,* Apple Growth Partners, Inc., Apple Growth Partners, LLC, and Charles Mullen.

Brennan, Manna, & Diamond, LLC, and Donald W. Davis, Jr., and Elizabeth Shively Boatwright, *for appellee/cross-appellant* Michael Sweeney.

David A. Campbell, *pro se.*

MARY J. BOYLE, J.:

{¶ 1} Appellant/cross-appellee David A. Campbell ("Campbell"), pro se, appeals the trial court's decision granting the motion for sanctions filed by defendants-appellees Apple Growth Partners, Inc., Apple Growth Partners LLC, and Charles Mullen ("Mullen") (collectively "AGP"), and defendant-appellee/cross-appellant Michael Sweeney ("Sweeney"). Campbell contends the trial court erred when it imposed a sanctions order against him in the amount of $104,171.27. AGP counters that the award in its favor was proper but the award to Sweeney should be reversed because the sanctions order was imposed without first holding a hearing on Sweeney's motion. In his cross-appeal, Sweeney also contends that the sanctions award with respect to him should be reversed because the court did not hold a hearing on his motion prior to imposing sanctions. We agree with AGP and Sweeney, and for the reasons that follow, we affirm the sanctions award with respect to AGP's motion, reverse the portion of the award regarding Sweeney's motion, and remand the matter for a hearing on Sweeney's motion for sanctions.

I. Facts and Procedural History

{¶ 2} In January 2018, the plaintiff in the underlying action, AMG Peterbilt Group, LLC ("AMG"), a franchisee of Peterbilt, retained AGP to provide it with accounting services. AGP, Mullen (Chairman of AGP), and Sweeney (banking advisor) also served AMG by acting as a "business advisory committee." The committee additionally included AMG's CFO ("CFO") and outside counsel. The purpose of the business advisory committee was to provide AMG with "legal,

accounting, financial and banking advice" and "to provide business advice to AMG on . . . all other aspects of AMG's business." (Amended complaint, July 8, 2022.)

{¶ 3}    AMG had "cash flow" problems and eventually became "out of trust" with Peterbilt.[1]    In March 2019, Peterbilt sent AMG a letter titled, "AMG PETERBILT COMPLIANCE WAIVER."  The waiver states that it was furnished to "satisfy the auditors concern of being out of trust at December 31, 2018."  In April 2019, AMG provided AGP with a letter signed by AMG's CEO and CFO representing to AGP that AMG had "complied with all aspects of contractual agreements that would have a material effect on the financial statements in the event of noncompliance."

{¶ 4}    Ultimately, AMG ceased it operations and sold substantially all of its assets to Ohio Machinery Co. ("Ohio Machinery") by way of an Asset Purchase Agreement ("APA") executed in December 2019.  Campbell was one of the attorneys who represented AMG in connection with the asset sale to Ohio Machinery.  The APA included a detailed description of the assets sold to Ohio Machinery, as well as those retained by AMG.  Specifically, Section 2.1 of the APA, "Purchased Assets," provides that Ohio Machinery

> shall purchase, pay for and accept from [AMG], all of the assets, properties and rights of [AMG] Related to the Business (except as otherwise provided in Section 2.2 hereof.). . .  The assets of [AMG] purchased by [Ohio Machinery] pursuant to this [APA] shall include the following assets of the Business (except as otherwise provided in

---

[1] "Out of trust" refers to AMG's failure to timely remit payments for trucks purchased by AMG customers to Peterbilt.

Section 2.2 hereof) as they exist on the Closing Date (collectively, the "Purchased Assets"):

. . .

(j) all other assets, properties and rights of [AMG] of every kind, nature, character and description not specifically set forth in this Section 2.1 and whether or not similar to the items set forth in this Section 2.1, which are not specifically included in Retained Assets.

Section 2.2 of the APA, "Retained Assets," does not include any third-party claims or causes of action as being exempted from the asset sale. Likewise, the accompanying schedules to the APA omit any reference to legal claims, or causes of action, as being among AMG's retained assets.

{¶ 5} Following AMG's sale to Ohio Machinery, Campbell represented AMG in a 2019 lawsuit filed by AMG's former CFO against AMG to be compensated for unused paid time off.[2] Campbell filed a counterclaim on AMG's behalf against the CFO "based upon his use of trade secrets" and "his breach of duty of loyalty." (Tr. 93-94.) Campbell also deposed the CFO, Mullen, and Sweeney in this litigation. As a result of this litigation, Campbell believed that members of AMG's business advisory committee (AGP and Sweeney) engaged in some type of misconduct. Campbell sent an email to AGP's counsel after taking Mullen's deposition, asking if AGP had any interest in "resolving this matter." (Motion for sanctions, Sept. 20, 2024.) AGP's counsel replied to Campbell explaining why AGP believed AMG's purported claims against it were frivolous.

---

[2] The CFO was employed at AMG from 2017-2019.

{¶ 6} Ultimately, Campbell solicited initial counsel to represent AMG in its malpractice action against AGP and Sweeney. In February 2022, AMG's initial counsel sent correspondence to AGP's counsel advising that he had been retained to prosecute AMG's claims against AGP and Sweeney. In the email sent to AGP's counsel and copied to Campbell, initial counsel stated, "To clarify a few things, [Campbell] remains counsel for AMG, in fact he recently concluded the [CFO] litigation. He referred the client to me for claims and potential litigation against [outside counsel, AGP, and Sweeney]." (Motion for sanctions, Sept. 20, 2024.)

{¶ 7} In May 2022, initial counsel filed a complaint in the underlying case on behalf of AMG against AGP and Sweeney. AMG's complaint asserted claims for professional negligence and other causes of action based on AGP's accounting services and Sweeney's banking services to AMG during the period of 2017-2019. While the complaint was signed by initial counsel, Campbell participated in drafting the complaint and gave initial counsel "some of the factual allegations." (Tr. 124.)

{¶ 8} In August 2022, AMG filed an amended complaint, which named Apple Growth Partners, LLC as an additional party defendant. Both AGP and Sweeney filed answers to the amended complaint. Additionally, AGP filed a counterclaim and third-party complaint. In its counterclaim, AGP asserted a frivolous conduct claim against AMG and initial counsel, alleging that "AMG's Amended Complaint consists of allegations or other factual contentions that have no evidentiary support or are not likely to have evidentiary support after a

reasonable opportunity for further investigation or discovery." (AGP's amended answer, counterclaim, and third-party complaint, Apr. 14, 2023.)

{¶ 9} In April 2023, the trial court ordered AMG to respond to AGP's written discovery requests, which were served on AMG and were pending since June 2022. After obtaining some discovery from AMG, AGP moved for summary judgment on AMG's amended complaint in August 2023. Sweeney joined in AGP's arguments by filing a companion motion for summary judgment and incorporating AGP's motion for summary judgment.[3] In the motion, AGP argued that the accounting malpractice and other claims asserted in AMG's amended complaint accrued prior to AMG's sale of substantially all its assets to non-party Ohio Machinery in December 2019. As a result, AGP argued that these claims were included among the assets sold to Ohio Machinery, and AMG had no standing to prosecute its claims against them as the real party in interest. Specifically, AGP stated:

> AMG sold substantially all of its assets — including any then-accrued legal claims — to non-party [Ohio Machinery] in December 2019. Because the vast majority of AMG's claims against [AGP] accrued prior to the subject asset sale, AMG is not the real party in interest and lacks standing to assert those claims in this litigation. Additionally, the sole post-[asset] sale claim asserted by AMG is based on [AGP's] response to a federal grand jury subpoena and is barred by the absolute immunity afforded to grand jury witnesses and the common-law litigation privilege.

(Motion for summary judgment, Aug. 4, 2023.)

---

[3] Any reference to AGP's motion for summary judgment includes reference to Sweeney's motion for summary judgment unless otherwise indicated.

{¶ 10} AMG did not file an opposition to this motion. Then in December 2023, Campbell filed a motion on AMG's behalf, requesting the court stay the matter for 45 days to permit AMG to locate new counsel. In February 2024, initial counsel filed a motion to withdraw, which the court granted after a hearing. The court then gave AMG until March 29, 2024, to oppose summary judgment. Ultimately, AMG filed an opposition to AGP's motion for summary judgment and a motion for leave to withdraw AMG's defaulted admissions in April 2024.[4] In its brief in opposition, which was signed by Campbell, AMG did not address the argument that it was not the real party in interest, but rather stated that initial counsel was "dilatory in this lawsuit." (Memorandum in opposition, Apr. 1, 2024.)

{¶ 11} In August 2024, the trial court granted AGP's and Sweeney's motions for summary judgment and denied AMG's motion to withdraw its defaulted admissions. The trial court found that

> [b]y the contract, [AMG] sold to [Ohio Machinery], "all of the assets, properties and rights of seller related to [its] business." Those assets include a list of specific items plus "all other assets, properties and rights of [AMG] of every kind, nature, character and description not specifically set forth in this Section 2.1 and whether or not similar to the items set forth in this Section 2.1, which are not specifically" excluded as retained assets in Section 2.2. The retained assets did not include (1) the contracts AMG had with the defendants and (2) any causes of action, legal claims or prospective lawsuits. Since they were not retained by AMG, any such assets became the property of [Ohio Machinery] upon executing the asset purchase.
>
> A "cause of action" is defined as a group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person. *Estate of Johnson v.*

---

[4] Because AMG failed to respond to these requests, they were deemed admitted by operation of law under Civ.R. 36(A)(1).

*Randall Smith, Inc.*, 2013-Ohio-1507, ¶15, 135 Ohio St. 3d 440, 443. A cause of action is an asset. *Chrysler Grp., L.L.C, v. Dixon*, 2017-Ohio-1161, Cuyahoga County App. No. 104628, ¶17. Here, AMG's causes of action had already accrued by the time the business was sold, and they were not excepted from the asset purchase. As of December 9, 2019, therefore, AMG's causes of action belonged to [Ohio Machinery].

(Footnotes omitted.) (Judgment entry, Aug. 2, 2024.)

{¶ 12} Following the court's grant of summary judgment in its favor, AGP dismissed its pending counterclaims and third-party claims. AMG then filed an appeal to this court from the trial court's summary judgment order on September 12, 2024. *AMG Peterbilt Group, LLC v. Apple Growth Partners, Inc., et al.*, 8th Dist. Cuyahoga No. 114353. On September 20, 2024, AGP filed its motion for sanctions, in the trial court, against AMG and Campbell. In its motion, AGP argued that Campbell, who had represented AMG in connection with the underlying asset sale to Ohio Machinery, frivolously pursued AMG's claims despite the fact that they were included in the sale of substantially all of AMG's assets years earlier. AGP contended that even though Campbell was aware of AGP's standing arguments when he asked the court to stay the proceeding, he took no action to dismiss AMG's frivolous claims or to respond to AGP's arguments on the merits.

{¶ 13} On September 25, 2024, this court stayed AMG's appeal and remanded the case "solely for the trial court to rule on the pending motion for sanctions." (Motion No. 578095 (Sept. 25, 2024).) That same day, Sweeney filed a companion motion for sanctions.[5] Campbell filed a brief in opposition to sanctions

---

[5] Any reference to AGP's motion for sanctions includes reference to Sweeney's motion for sanctions unless otherwise indicated.

on November 15, 2024.  In the opposition, he essentially argued that initial counsel abandoned the case; AGP cannot prove that "no reasonable lawyer could argue the claim"; AMG's claims are meritorious; and AGP has hid behind the APA rather than providing any sworn testimony on the underlying facts.  Campbell failed to argue that accounting malpractice claims are not assignable under Ohio law.  Then, on November 25, 2024, the day before the sanctions hearing, Campbell filed supplemental authority, raising for the time that accounting malpractice claims cannot be assigned.  AGP filed a response to Campbell's notice of supplemental authority, arguing that Campbell relied on new arguments not previously made, failed to cite a single case in Ohio holding that accounting malpractice claims are not assignable, and every jurisdiction that has considered Campbell's argument has rejected it.  The matter proceeded to a hearing before the trial court the next day.

{¶ 14} At the beginning of the hearing, the court stated that it would only hear argument and evidence related to AGP's motion for sanctions.  The court declined to consider Sweeney's companion motion because of its concern about exceeding the scope of this court's remand order.  The hearing then proceeded with respect to AGP's motion only.  The following evidence was adduced.

{¶ 15} AGP's counsel testified that AGP incurred $95,105.50 in legal fees and $9,065.77 in costs associated with this matter.  "And in preparation for the hearing, [AGP's counsel] reviewed the bills again and confirmed what [he] had originally believed at the time the bills had been sent, which is that the time is reasonable and the costs were reasonable considering all the factors we're supposed to consider

under Rule 1.5 of the Rules of Professional Conduct." (Tr. 42.) According to AGP's counsel, early on, AMG "made clear that it was demanding upwards of 20 million dollars in this lawsuit." (Tr. 43.) It took AGP's counsel time "to sift through years worth of communications, records, business records, accounting records, to properly defend this case was extensive." (Tr. 43.) Furthermore, in his opposition to AGP's motion for summary judgment, Campbell did not raise any issue about the assignability of accounting malpractice claims.

{¶ 16} On cross-examination, AGP's counsel testified that this lawsuit should have never been filed because there was a standing issue and AMG sold its accounting malpractice claim to Ohio Machinery. AGP's counsel acknowledged that it was initial counsel who signed the complaint, not Campbell, and it was initial counsel who represented AMG until he withdrew in February 2024. AGP's counsel further acknowledged that AGP dismissed its sanctions claims against initial counsel and AMG. AGP's counsel explained:

> [I]t became clear to us when we met with [initial counsel] in June of 2023, before we moved for summary judgment, to advise him of what our argument was going to be based on the asset purchase agreement, that he had no idea that AMG had sold its accrued causes of action to Ohio Machinery. We put the schedules to the APA together with the contract itself for the first time in May, 2023. When those were produced to us after we had to move to compel responses to discovery, we met with [initial counsel], I believe on June 8th of 2023 to share our findings and advised him of what our position was, and [initial counsel] told us that he would confer with his client, provide us with a response.
>
> Ultimately no meaningful response was provided but then that's when [initial counsel] sort of fell off from the case, and in our view, [initial counsel], once he learned that AMG no longer had standing to prosecute this case, did not take any further meaningful action to

prosecute a case that AMG did not own and we were satisfied he wasn't even aware of the standing issue at the time he filed the complaint.

(Tr. 49-50.)

{¶ 17} AGP's counsel further acknowledged that the first time Campbell's name appeared on the docket was in December 2023 when he asked the court for more time so that AMG could retain new counsel. When asked if Campbell's conduct in requesting more time to oppose summary judgment was frivolous, AGP's counsel replied, "No, it's coupled with the fact that he could not advance a single argument on the merits, [he] didn't dispute the truth of the defaulted admissions but still asked the Court to deny our motion for summary judgment just so [AMG could] conduct open ended discovery on a case that's litigated now for two years and wasn't able to tell the Court why." (Tr. 59.)

{¶ 18} AGP's counsel acknowledged that there is no caselaw in Ohio addressing the assignability of accounting malpractice claims, and in reviewing the cases cited by Campbell, every jurisdiction that "prohibits the assignment of legal malpractice case claims against lawyers has held that accounting malpractice claims are assignable . . . literally every jurisdiction that has considered it has held they can be assigned." (Tr. 62-63.) The court then noted that Campbell never made the argument that accounting claims are not assignable in AMG's brief in opposition to summary judgment.

{¶ 19} Campbell testified that he is an employment attorney and has never "filed or defended a malpractice case of any kind." (Tr. 89.) He first represented

AMG in 2017 and represented AMG with its APA in 2019. Campbell testified that he "wasn't involved in drafting [the APA]. [He] was involved in high-level negotiation at the very beginning just to verify who the buyer would be. And after that it was the corporate attorneys who handled the negotiations and the [APA]." (Tr. 90.) He stated that he did not draft the contracts nor the schedules to the APA. He further stated that he was not involved in negotiation of the terms of the APA. According to Campbell, he was not aware of any malpractice claims being asserted against AGP at that time. When asked if there was any negotiation about the sale of accounting or legal malpractice claims as part of the APA, Campbell replied:

> I have personal knowledge that there was not because the schedule as to litigation or threats of litigation was reviewed with me, [AMG's CEO] and the individuals of the seller who were considered to have seller's knowledge under the asset purchase agreement. And those individuals are the ones that — it was their knowledge that went into the schedules, that went into the notices. And so the corporate attorneys sat down with me and those, with seller's knowledge to review and none of us had any knowledge, belief, investigation, or claim against [AGP] or [Mullen]. It just never came up.

(Tr. 91-92.) Campbell further testified that he was not aware of the business advisory committee until after the APA was executed.

{¶ 20} With regard to AMG's former CFO's litigation, Campbell stated that as a result of that litigation, he came to believe that members of the business advisory committee had engaged in some type of misconduct. He testified that the former CFO admitted that he was acting on the advice of Sweeney, Mullen, and AGP "to seek out bank loans while everybody knew on that business advisory committee that AMG had been out of trust for more than a year and they were applying for

those loans and not advising the loans, the banks, not advising people who actually gave loans . . . and not advising minority investors who became owners of AMG of this out of trust status." (Tr. 94.)

{¶ 21} According to Campbell, he did not pursue the potential malpractice claims because he is not a malpractice attorney and, at the time, he was defending AMG in the former CFO's litigation. Therefore, he assisted AMG in finding a malpractice attorney to advise whether it had a claim. Ultimately, Campbell contacted initial counsel. As to his involvement in the case, Campbell testified:

> I would give factual information because I had taken, as [Mullen] testified, I took [Mullen's] deposition, I took [Sweeney's] deposition, I took [AMG's former CFO's] deposition in [that] litigation. I had reviewed documents related to the business advisory committee and I had many of those documents. So I was there to be able to say here's what we produced in [that] litigation, here you go, here's what the witnesses have testified to.

(Tr. 101.)

{¶ 22} Campbell testified that initial counsel never told him that initial counsel was named a party in AGP's counterclaim accusing him of frivolous conduct; initial counsel did not respond to discovery and the court awarded sanctions for the failure to respond to discovery; AGP's counsel sent a letter in July 2023 that raised claims for frivolous conduct based on standing; or that initial counsel did not respond the motions for summary judgment or the motions to dismiss.

{¶ 23} Campbell further testified that initial counsel contacted him sometime during June 2023, inquiring about the APA. Campbell did not hear from initial counsel again until November 2023. In the interim, initial counsel met with

AMG in September 2023, and based on the meeting, initial counsel was to provide AMG with a status and plan update within a week. Campbell testified that as of November 2023, initial counsel had not provided an update to AMG, despite repeated requests. Campbell communicated with initial counsel in mid-November 2023 asking about the status of the case.

{¶ 24} According to Campbell, initial counsel responded, "[Y]es, it does look terrible. It is bad but I can fix it. Can you guys let me give you a plan to fix it." (Tr. 107.) Initial counsel never provided a plan, and as a result, in December 2023, Campbell filed a pleading on AMG's behalf requesting a stay to permit new counsel to be obtained for AMG. During that time, Campbell attempted to locate new counsel for AMG. Campbell testified that initial counsel "wouldn't give us the file." (Tr. 114.) AMG was unable to secure new counsel so Campbell came into assist AMG and filed an opposition to summary judgment. In AMG's opposition, AMG's CEO averred that "there was no knowledge on behalf of the sellers that there was any claim against the [AGP] parties." (Tr. 113.)

{¶ 25} Campbell testified that he was not aware of AGP's standing argument until some point after May 2024. Campbell stated that when he first came into the case, AGP's counsel did not demand that he dismiss the case as frivolous. He stated that he did not dismiss the case when he first came in "[b]ecause . . . there ha[ve] been four attorneys who have reviewed — four malpractice attorneys who reviewed all the underlying facts, all four of those attorneys believed strongly in the case[.]" (Tr. 122.)

{¶ 26} On cross-examination, Campbell testified that at the time he filed AMG's brief in opposition, he wanted to address the merits of the case because initial counsel failed to do so. At that point in time, he was "trying to salvage the case." (Tr. 134.) When asked by AGP's counsel how many of the arguments that have been raised in opposition to sanctions on the merits regarding the APA were raised in opposition to summary judgment, Campbell replied, "The argument — the two arguments presented in opposition of summary judgment, the primary arguments were [initial counsel] had failed to prosecute the case, here's all the facts as to that." (Tr. 135.)

{¶ 27} Following the conclusion of the hearing, the court granted AGP's motion for sanctions along with Sweeney's motion. The court awarded sanctions against AMG and Campbell, jointly and severally, in the amount of $104,171.27. In a thorough, nine-page opinion, the court found that

> [b]ased on the available evidence, [AGP and Sweeney] are correct: this is a lawsuit that AMG never should have filed because it did not have the right to file it, even assuming the truth of the allegations in the complaint and amended complaint. Campbell, too, knew that before he enlisted another lawyer to bring the case and then he persisted in extending the litigation after it was filed. This conduct by both AMG and Campbell is frivolous under the statute and, based upon the record evidence, [AGP and Sweeney] were adversely affected by the frivolous conduct and are entitled to an award of their court costs, reasonable attorney's fees, and other reasonable expenses incurred because of the frivolous conduct. Based upon the hearing evidence, those amounts in this case are as follows: $95,105.50 in attorney's fees and $9,065.77 in costs.

(Judgment Entry, Dec. 5, 2024.)

{¶ 28} It is from this order that Campbell appeals and Sweeney cross-appeals, raising the following assigned errors for review, which shall be discussed together and out of order where appropriate.[6]

## II. Assignments and Cross-Assignments of Error

### Campbell's Assignments of Error

**Assignment of Error I:** The trial court erred when it entered the Journal Entry dated December 5, 2024 and the Judgment Entry Granting the Motion For Sanctions Filed by [AGP] and [Mullen], and joined in [Sweeney] dated December 5, 2024 (collectively, the "Sanctions Order") because the Sanctions Order violates R.C. 2323.51.

**Assignment of Error II:** The trial court erred when it entered the Sanctions Order because the factual findings in the Sanctions Order are contrary to the sworn testimony, unreasonable and arbitrary.

**Assignment of Error III:** The trial court erred when it entered the Sanctions Order because the legal findings in the Sanctions Order are contrary to Ohio law and R.C. 2323.51.

**Assignment of Error IV:** The trial court erred when it entered the Sanctions Order because R.C. 2323.51 requires "conduct" and an attorney who did not make an appearance when the complaint was filed and was in different law firm did not partake in conduct as defined under R.C. 2323.51.

**Assignment of Error V:** The trial court erred when it entered the Sanctions Order because [AMG] was the real party in interest because malpractice claims cannot be assigned.

**Assignment of Error VI:** The trial court erred when it entered the Sanctions Order because AMG's amended complaint (Doc. # 24) was firmly based on existing law and the relevant facts.

---

[6] We note that AMG's appeal (No. 114353) was dismissed in January 2025. AMG has not appealed from the sanctions award and is not a party to this appeal.

**Assignment of Error VII:** The trial court erred when it entered the Sanctions Order because the trial court did not permit AMG to either present evidence or to obtain counsel in order to present evidence.

**Assignment of Error VIII:** The trial court erred when it entered the Sanctions Order because the trial court ordered sanctions to [Sweeney] without providing [Campbell] a hearing on Sweeney's motion.

**Assignment of Error IX:** The trial court erred when it entered the Sanctions Order because the trial court did not award reasonable attorney fees and costs.

**Sweeney's Cross-Assignments of Error**

**Cross-Assignment of Error I:** The trial court erred when it issued the December 5, 2024 Judgment Entry containing material inconsistencies contrary to the November 26, 2024 Hearing Transcript and the November 27, 2024 Journal Entry, including that Sweeney's Motion for Sanctions was heard at the hearing.

**Cross-Assignment of Error II:** The trial court erred by limiting Sweeney to share in some portion of the [attorney] fees and costs incurred by [AGP], when Sweeney has not yet had the opportunity to present evidence of his attorneys fees and costs in defending this action at a hearing.

## III. Law and Analysis

### Motion for Sanctions — R.C. 2323.51

### A. Standard of Review

{¶ 29} The decision to grant or deny sanctions under R.C. 2323.51 rests within the sound discretion of the trial court and "a reviewing court will not reverse a trial court's decision absent an abuse of discretion." *Grimes v. Oviatt*, 2019-Ohio-1365, ¶ 20 (8th Dist.) ("*Grimes II*"), citing *Grimes v. Oviatt*, 2017-Ohio-1174, ¶ 27 (8th Dist.), and *Riston v. Butler*, 2002-Ohio-2308 (1st Dist.); *see also Walters v. Carter*, 2020-Ohio-807, ¶ 17 (8th Dist.), citing *Bikkani v. Lee*, 2008-Ohio-3130,

¶ 30 (8th Dist.). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

## B. Frivolous Conduct

{¶ 30} At issue in this appeal is whether Campbell's conduct was frivolous under R.C. 2323.51, which authorizes a trial court to award attorney fees to a party adversely affected by frivolous conduct in a civil action. "Conduct" is defined as

> [t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action[.]

R.C. 2323.51(A)(1)(a). "Frivolous conduct" is defined in that statute as any of the following:

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
>
> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
>
> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a)(i)-(iv).

{¶ 31} This court has previously stated that the analysis of a claim that is frivolous under R.C. 2323.51(A)(2)(a)(i), (iii), or (iv) requires a factual determination. *Walters* at ¶ 22 and 24, citing *Lable & Co. v. Flowers*, 104 Ohio App.3d 227, 233 (9th Dist. 1995). Because the trial judge has the benefit of viewing the entire course of the proceedings and is the most familiar with the parties and their attorneys, a finding about whether conduct was performed to harass or injure another party is subject to substantial deference by a reviewing court. *Id.*, citing *Grimes II* at ¶ 27 and *Lable & Co.* at 233. Whereas R.C. 2323.51(A)(2)(a)(ii) (whether a claim is warranted under existing law) represents a question of law that this court must review de novo. *Walters* at ¶ 23, citing *Grimes II* at ¶ 30. "To determine whether a claim is frivolous under R.C. 2323.51, an objective standard is applied without reference to what the individual knew or believed." *Id.* at ¶ 13, citing *ABN Amro Mtge. Group, Inc. v. Evans*, 2013-Ohio-1557, ¶ 18 (8th Dist.). "The test is whether no reasonable attorney would have filed the action based upon the existing law." *Id.*, citing *ABN* at ¶ 20. "'In other words, a claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim.'" *Orbit Elecs., Inc. v. Helm Instrument Co.*, 2006-Ohio-2317, ¶ 49 (8th Dist.), quoting *Hickman v. Murray*, 1996 Ohio App. LEXIS 1028, *14 (2d Dist. Mar. 22, 1996). Moreover, "[c]ourts must carefully apply R.C. 2323.51 so that legitimate claims are not chilled." *Walters* at ¶ 25, citing *Miller v. Miller*, 2012-Ohio-2905, ¶ 14 (5th Dist.). "'A party is not frivolous merely because a claim is not well-grounded. * * * Furthermore, the statute was not intended to punish mere misjudgment or

tactical error.  * * * Instead the statute was designed to chill egregious, overzealous, unjustifiable, and frivolous action.  * * *.'"  *Id.*, quoting *Riston* at ¶ 35 (1st Dist.).

### 1.  "Conduct" by Campbell

{¶ 32}  Here, Campbell's first argument appears to correspond to his fourth assignment of error.  Campbell argues that the sanctions order should be reversed because he did not partake in "conduct" as to the complaint and amended complaint.  Campbell notes that he did not sign the complaint and amended complaint and he was the attorney of record until December 2023, which was 18 months after initial counsel filed the complaint.  And because the court's sanction order stated that the "operative pleading is the amended complaint filed on July 8, 2022[,]" he did not partake in the conduct required under R.C. 2323.51(A)(1)(a) (the filing of a civil action or the filing of a pleading).  (Sanctions Order, Dec. 5, 2024.)

{¶ 33}  Contrary to Campbell's assertion, the plain text of the statute additionally defines conduct as "the taking of any other action in connection with a civil action[.]"  R.C. 2323.51(A)(1)(a).  In the instant case, the court found that Campbell engaged in "conduct" by:  (1) failing to dismiss AMG's claims after entering an appearance in December 2023; (2) filing a brief in opposition to AGP's motion for summary judgment in April 2024 that failed to address any of AGP's arguments on the merits; (3) attempting to withdraw defaulted admissions; and (4) prolonging the litigation despite knowing that AMG was not the real party in interest.  In this regard, the court distinguished Campbell's conduct from initial counsel's when it stated:

Additionally, while [initial counsel] may not have been aware of the assignment, Campbell certainly was since the hearing evidence proved that he was involved in negotiating the asset sale and that he represented AMG in post-asset sale litigation against [the former CFO]. Moreover, to this date AMG has still never opposed the motion for summary judgment in any meaningful way and has therefore passed on the opportunity to make a good faith argument for the establishment of new law.

. . .

Campbell, in this case, is in a position similar to plaintiff's counsel in [*Murray v. Miller*, 2015-Ohio-3726 (5th Dist.)] because he knew at the time he was searching for a trial lawyer to undertake this litigation that AMG was not the real party in interest on the accounting malpractice cause of action yet still pursued the litigation. Moreover, once Campbell's chosen trial lawyer flamed out, Campbell still evaded the standing issue and extended the litigation, to the defendants' detriment.

(Footnote omitted.) (Sanctions order, Dec. 5, 2024.)

{¶ 34} Based on the foregoing, we cannot say the court abused its discretion by finding that Campbell engaged in "conduct" as set forth R.C. 2323.51(A)(1)(a). Therefore, the fourth assignment of error is overruled.

### 2. "Frivolous Conduct" by Campbell

{¶ 35} In Campbell's first, second, third, fifth, and sixth assignments of error, he challenges the sanctions award on the basis that his "conduct" was not "frivolous" because a reasonable attorney would have filed the amended complaint and pursued AMG's claims. In support of his argument, he contends that (1) AMG did not assign its claims to Ohio Machinery; (2) AMG's accounting malpractice claims cannot be assigned; and (3) AMG's claims are reasonable because many attorneys have pursued them.

{¶ 36} Because AGP sought, and the trial court awarded, sanctions under R.C. 2323.51(A)(2)(a)(ii), we review the trial court's determination of frivolity de novo. *Walters*, 2020-Ohio-807 at ¶ 23 (8th Dist.), citing *Grimes II*, 2019-Ohio-1365 at ¶ 30 (8th Dist.). As stated above, this standard requires an objective assessment of "whether no reasonable attorney would have filed the action based upon the existing law." *Id.*, citing *ABN*, 2013-Ohio-1557 at ¶ 20 (8th Dist.). And in our de novo review, we find that Campbell's conduct in this case was frivolous and adversely affected AGP and Sweeney because no reasonable attorney would continue to pursue AMG's claims after knowing that AMG was not the real party in interest by virtue AMG's sale to Ohio Machinery in 2019, and Campbell's conduct post-summary judgment continued to provide no justification for pursuing AMG's claims.

### a. AMG's Assignment to Ohio Machinery

{¶ 37} First, Campbell, relying on three provisions of the APA, argues that that the "plain language" of the APA does not support the conclusion that AMG's accrued claims were sold to Ohio Machinery. Whereas AGP's primary argument in support of its sanctions motion is that the trial court already found, when it granted summary judgment in AGP's favor, that AMG was not the real party in interest and that it lacked standing to assert claims against AGP based on AMG's sale of substantially all of its assets, including any then-accrued causes of action, to Ohio Machinery in December 2019. We agree that AMG was not the real party in interest possessing the right to assert the causes of action set forth in the underlying lawsuit.

{¶ 38} Civ.R. 17(A) requires that "[e]very action shall be prosecuted in the name of the real party in interest." "A 'real party in interest' has been defined as '* * *one who has a real interest in the subject matter of the litigation, [. . . ] and who is *directly* benefited or injured by the outcome of the case.'" (Emphasis in original.) (Internal citations omitted.) *Shealy v. Campbell*, 20 Ohio St.3d 23, 25 (1985) quoting *W. Clermont Edn. Assn. v. W. Clermont Bd. of Edn.*, 67 Ohio App.2d 160, 162 (12th Dist. 1980).

{¶ 39} In the instant case, the first section of the APA that Campbell relies on is Section 14.2, which provides that the parties to the APA will bear their own costs and expenses in connection with the transaction. Section 14.2 does not, however, discuss anything about AMG retaining previously accrued claims. Next, Campbell cites to Section 3.2 of the APA, which governs "Retained Liabilities," and provides that AMG "shall retain, discharge, and satisfy when due and indemnify and hold [Ohio Machinery] harmless from and against, and [Ohio Machinery] shall not assume . . . any liability, claim or obligation with respect to any Action pending as of the Closing Date, or instituted hereafter, in connection with or arising out of the Business as operated by [AMG] on or before the Closing Date[.]" This section refers to third-party claims or "liabilities" against AMG related to the operation of AMG's business prior to the closing date, not "assets."

{¶ 40} Lastly, Campbell argues that under Section 14.5 of the APA, AGP and Sweeney were not "third party beneficiaries" and cannot rely on the APA to argue that AMG was not the real party in interest. AGP and Sweeney, however, have never

argued that they are "third-party beneficiaries" of the APA, nor do they have to be "third-party beneficiaries" to challenge AMG's standing as the real party in interest. *See DDR Hendon Nassau Park II LP v. RadioShack Corp.*, 2010 U.S. Dist. LEXIS 16198, *12 (N.D. Ohio Feb. 24, 2010) (where the United States District Court for the Northern District of Ohio held that the assignment of DDR's claim to Gordon Brothers did not provide RadioShack with any third party benefit because it did not extinguish any of RadioShack's liability. "The assignment merely transferred DDR's right to sue RadioShack to Gordon Brothers.").

{¶ 41} Rather, the APA provisions addressing assets are clear. The APA describes, with specificity, the assets that were sold as well as those that were retained. Under the APA, Ohio Machinery acquired "all of the assets, properties and rights of [AMG] Related to the Business" including "all other assets, properties and rights of [AMG] of every kind, nature, character and description" that were "not specifically included in Retained Assets." (Sections 2.1 and 2.1(j) of the APA.) Section 2.2 of the APA, "Retained Assets," does not include any third-party claims or causes of action as being exempted from the asset sale. Additionally, the accompanying schedules to the APA omit any reference to legal claims, or causes of action as being among AMG's retained assets. Therefore, AMG was no longer the real party in interest when it sold it rights to Ohio Machinery as set forth in the APA.

{¶ 42} The fact that AMG's accrued legal claims were included in the asset sale to Ohio Machinery is further supported by existing caselaw. A "cause of action" has been defined as "'[a] group of operative facts giving rise to one or more bases for

suing; a factual situation that entitled one person to obtain a remedy in court from another person.'" *Estate of Johnson v. Randall Smith, Inc.*, 2013-Ohio-1507, ¶ 15, quoting *Black's Law Dictionary* 251 (9th Ed. 2009). This court has held that a cause of action is an asset that may be bought and sold like any other asset. *Chrysler Group, L.L.C. v. Dixon*, 2017-Ohio-1161, ¶ 17 (8th Dist.), citing *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004); *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001). Here, AMG's own pleadings alleged that AGP's and Sweeney's professional negligence occurred prior to the sale to Ohio Machinery. Because AMG's causes of action already accrued before the business was sold on December 9, 2019, and they were not excepted from the asset purchase, AMG's legal claims were included in Ohio Machinery's acquisition of "all other assets, properties and rights of [AMG] of every kind, nature, character and description . . . which are not specifically included in Retained Assets." (Section 2.1(j) of the APA.)

{¶ 43} Moreover, Campbell failed to address the real-party-in-interest issue in AMG's opposition to AGP's motion for summary judgment. In the matter before us, the trial court found and we agree that Campbell is in a position similar to the plaintiff's attorney in *Murray*, 2015-Ohio-3726 (5th Dist.), because Campbell knew at the time he was attempting to secure a new attorney to undertake this case that AMG was not the real party in interest on the accounting malpractice claim but still pursued the litigation.

{¶ 44} In *Murray*, a former client, Murray, filed a malpractice claim against his former attorney, Miller. Before the suit was filed, but after the malpractice cause

of action accrued, Murray filed for bankruptcy. In the bankruptcy case, he did not list a potential claim against Miller as an asset. The bankruptcy was discharged in January 2012, and Murray filed a complaint for legal malpractice against Miller approximately six months later. The trial court ultimately granted Miller's motion for summary judgment on the grounds that Murray was no longer the real party in interest on the claim with standing to bring the legal malpractice claim. Miller claimed the bankruptcy trustee should have brought the action. Miller then moved for sanctions based on frivolous conduct for filing a lawsuit without standing. The court granted Miller's motion, noting that Murray's failure to substitute the real party in interest, the bankruptcy trustee, was frivolous conduct. *Id.* at ¶ 3-11. On appeal, the Fifth District Court of Appeals affirmed the trial court. In doing so, the *Murray* Court stated:

> Once opposing counsel alerted [Murray's counsel] to the fact that Murray had not properly instituted the case and was not the real party in interest, [Murray's counsel] did not take any corrective action. It was not until [more than one year after the complaint was filed] that Murray moved to substitute the bankruptcy trustee as the plaintiff. [Murray's counsel's] conduct contributed to the opposing party's incurring attorney fees to defend an action that Murray had no standing to pursue. Upon our de novo review, we find that [Murray's counsel's] failure to take corrective action for approximately [one year] may be construed as frivolous conduct.

*Id.* at ¶ 33.

{¶ 45} Similarly, Campbell knew at the time he attempted to secure a new attorney to undertake this litigation that AMG was not the real party in interest on the accounting malpractice claim yet still pursued the litigation. Furthermore,

Campbell chose to file an opposition to AGP's motion for summary judgment that placed blame on initial counsel and did not oppose the merits of AGP's summary judgment motion, thereby evading the "real party at interest" issue and extending the litigation to AGP and Sweeney's detriment. Then, one day before the sanctions hearing, Campbell filed supplemental authority, raising for the first time, that accounting malpractice claims are not assignable under Ohio law. The trial court found and we agree that by failing to make any argument in opposition to AGP's dispositive motion, Campbell "passed on the opportunity to make a good faith argument for the establishment of new law." (Sanctions Order, Dec. 5, 2024.)

### b. Assignment of Accounting Malpractice Claim

{¶ 46} With regard to the assignability of accounting malpractice claims, Campbell acknowledges that there is no caselaw in Ohio on this issue but argues that these claims are akin to legal malpractice claims, which he contends are not assignable. Legal malpractice claims, however, are not at issue here, and Campbell failed to cite to a single case supporting his contention that accounting malpractice claims are subject to the same rule for legal malpractice claims.[7] Moreover, in

---

[7] While no case in Ohio has addressed this question, we recognize that courts in other jurisdictions have held that accounting malpractice claims are assignable. *See Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick*, 742 So.2d 328, 331 (Fla.App. 1999), affirmed by, 765 So.2d 36 (Fla. 2000) ("[B]ecause accounting malpractice claims differ in a number of crucial ways from legal malpractice claims, we have no difficulty in concluding that the former should not be prohibited from assignment and that the insured's claim in this case was an assignable claim."); *First Community Bank & Tr. v. Kelley, Hardesty, Smith & Co.*, 663 N.E.2d 218, 222 (Ind.App. 1996) (holding that accountant malpractice claims are assignable because "[t]here is no threat of commercialization when an assignment of an accountant malpractice claim is incidental to the purchase of assets"); *Riley v. Ameritech Corp.*, 147 F.Supp.2d 762 (E.D.Mich. 2001) (finding that accounting

Campbell's brief in opposition to AGP's sanctions motion, he essentially argued that initial counsel abandoned the case; AGP cannot prove that "no reasonable lawyer could argue the claim"; AMG's claims are meritorious; and AGP has hid behind the APA rather than providing any sworn testimony on the underlying facts. Notably, Campbell failed to argue that accounting malpractice claims are unassignable under Ohio law in the brief in opposition to AGP's motion for summary judgment or in the brief in opposition to sanctions. Instead, the day before the sanctions hearing, Campbell filed supplemental authority, relying on legal malpractice claims, for the proposition that accounting malpractice claims cannot be assigned. Campbell has been unable to cite to a single case holding that an accounting malpractice claim is unassignable. Furthermore, at the sanctions hearing and in its judgment entry awarding sanctions, the court stated that the assignability of an accounting malpractice claim argument was never made. We agree with the trial court's finding that Campbell "passed on the opportunity to make a good faith argument for the establishment of new law." (Sanctions order, Dec. 5, 2024.)

### c. Involvement of Other Attorneys

{¶ 47} Next, Campbell argues that two other attorneys represented AMG in this matter and if AGP "truly believed that '[t]his case should have never been

---

malpractice claims are assignable because "the accountant-client privilege is not recognized at common-law and that the accountant-client relationship was not the close, highly confidential relationship that gave rise to the rule forbidding assignment of legal malpractice claims." *Id.*, citing *KPMG* at 330.); *Std. Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 17 (Ariz.App. 1996) (distinguishing between attorney and auditor malpractice claims and holding the auditor malpractice claims could be assigned while legal practice claims could not).

filed[,]'" AGP would be challenging all counsel involved in this lawsuit. (Campbell's Appellate brief, p. 33.) Campbell's argument is unsupported by the facts. None of the attorneys who initially agreed to represent AMG continued to do so. They withdrew from the case at some point. When AMG was to pursue its appeal from the trial court's summary-judgment order, no attorney entered an appearance, and as a result, AMG's appeal was dismissed by this court. *See AMG Peterbilt Group*, 8th Dist. Cuyahoga No. 114353.

{¶ 48} In sum, the trial court found, and we agree, that Campbell's conduct was frivolous because no reasonable lawyer would continue to pursue AMG's claims after AMG sold them to Ohio Machinery — a fact that AMG withheld from AGP for at least a year after it filed its complaint.[8] While initial counsel may not have been aware of the assignment, Campbell was aware because the evidence at the sanctions hearing demonstrated that he was involved in negotiating the asset sale, he represented AMG in post-asset sale litigation against AMG's former CFO, and AMG never opposed AGP's "motion for summary judgment in any meaningful way and has therefore passed on the opportunity to make a good faith argument for the establishment of new law." (Sanctions order, Dec. 5, 2024.) This is not a lawsuit where the plaintiff had a reasonable belief that it had a meritorious claim but was unable to develop evidence needed to support the claim. Instead, AMG knew before

---

[8] Our holding is limited to the circumstances of this particular case. Nothing herein should be construed as suggesting that Campbell's conduct is frivolous merely because AMG's claim was "'not well-grounded,'" or that Campbell was punished because of "'mere misjudgment or tactical error.'" *Walters*, 2020-Ohio-807 at ¶ 25 (8th Dist.), quoting *Riston*, 2002-Ohio-2308 at ¶ 35 (1st Dist.).

the complaint was filed that it had no right to bring the claim, regardless of the evidence available to support it.

{¶ 49} Thus, in light of the foregoing, and with our limited standard of review in mind, we defer to the trial court because it had the benefit of viewing the entire course of the proceedings and is the most familiar with the parties and their attorneys. *Grimes II*, 2019-Ohio-1365 at ¶ 27 and *Lable & Co.*, 104 Ohio App.3d at 233. Accordingly, the trial court did not abuse of discretion when finding that such conduct was frivolous under R.C. 2323.51(A)(2)(a)(ii).

{¶ 50} The first, second, third, fifth, and sixth assignments of error are overruled.

### 3. Presenting Evidence and Reasonable Attorney Fees and Costs

{¶ 51} In Campbell's seventh assignment of error, he contends the court erred when it entered the sanctions order because the court "did not permit AMG to either present evidence or to obtain counsel in order to present evidence. (Argument at Factual Statement)." (Campbell's brief, pg. ix.) In the ninth assignment of error, Campbell argues trial court erred when it entered the sanctions order "because the trial court did not award reasonable attorney fees and costs." *Id.* Campbell, however, failed to present any argument in support of these assigned errors.

{¶ 52} App.R. 16(A)(7) requires an appellant to include within their brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the

contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) provides that an appellate court may decline to address an assignment of error if an appellant fails to cite any legal authority to support their argument.

{¶ 53} Because Campbell failed to present any argument in support of these assigned errors as required by App.R. 12 and 16, we decline to review them. "It is not this court's duty to construct legal arguments to support an appellant's appeal." *Walsh v. Walsh*, 2023-Ohio-1675, ¶ 11 (8th Dist.), citing *State ex rel. Petro v. Gold*, 2006-Ohio-943, ¶ 94 (10th Dist.).

{¶ 54} Therefore, the seventh and ninth assignments of error are overruled.

## C. No Hearing on Sweeney's Motion

{¶ 55} In Campbell's eighth assignment of error and in Sweeney's two cross-assignments of error, both parties concede that the court erred by awarding Sweeney sanctions without a hearing. As a result, Campbell contends that the entire sanctions order should be reversed. Whereas Sweeney argues and AGP agrees that the matter should be remanded for a hearing on Sweeney's motion. We find Sweeney and AGP's argument more persuasive.

{¶ 56} R.C. 2323.51(B)(2)(c) provides that a sanctions award may be ordered "only after the court . . . conducts the hearing described in [R.C. 2323.52 (B)(2)(a)], allows the parties and counsel of record involved to present any relevant evidence at the hearing, determines that the conduct involved was frivolous and that a party was adversely affected by it, and then determines the amount of the award to be made."

{¶ 57} Here, the record is clear that at the sanctions hearing the trial court declined to hear Sweeney's motion, citing concerns about the scope of the remand:

[COURT]: [Counsel], as I understand, you are here for defendant Sweeney on his, I believe it was September 25 or later motion for sanctions. I'm looking, [Counsel], at the appellate court's remand dated September 25 and it reads, open quote motion by appellees [AGP and Mullen] to stay appeal and remand to the trial court as granted, period. The matter is remanded solely for the trial court to rule on the pending motion for sanctions, period, close quote. And then there is a little more after that but the point being this remand was strictly on the motion of [AGP and Mullen]'s motion for sanctions, so today I'm not going to hear [Sweeney's] motion for sanctions which was filed either — well, just very, very soon before the appellate remand, perhaps at the exact same time as or very shortly after, but it is not mentioned in the remand. And I'm unwilling to stray from the bounds of the written remand.

(Tr. 11-12.) The trial court then proceeded only on AGP's motion for sanctions, hearing the testimony and evidence of AGP, and granting a single judgment in favor of the defendants and against AMG and Campbell, jointly and severally, in the amount of $104,171.27.

{¶ 58} Based on the foregoing, we agree that the trial court must hold a hearing prior to a sanctions award in accordance with R.C. 2323.51(B)(2)(c). Therefore, we reverse the portion of the award regarding Sweeney's motion and remand the matter solely for a hearing on Sweeney's motion for sanctions. The sanctions award with regard to AGP shall remain undisturbed.

{¶ 59} Campbell's eighth assignment of error is overruled and both of Sweeney's cross-assignments of error are sustained.

**{¶ 60}** Accordingly, the judgment awarding AGP sanctions is affirmed; the sanctions award with respect to Sweeney is reversed, and the matter is remanded solely for a hearing on Sweeney's motion for sanctions.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

EILEEN A. GALLGHER, A.J., and
EILEEN T. GALLAGHER, J., CONCUR